**PACIFICO & LAWRENCE**
Attorneys at Law
705 AMBOY AVENUE
WOODBRIDGE, N.J. 07095
p (732) 634-5550 f (732) 218-5189

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRUNSWICK SURGICAL CENTER, LLP and JERSEY AMBULATORY CENTER, LLC, | Case No. 09-cv-5857 |
| Plaintiffs, | Civil Action |
| vs. | |
| CIGNA CORPORATION and its subsidiaries CIGNA HEALTHCARE OF NEW JERSEY and CONNECTICUT GENERAL LIFE INSURANCE COMPANY, | MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| Defendants. | |

## PROCEDURE

After the filing of the pleadings in this matter and at the time of the Initial Case Conference, it was concluded by the Court that the sole issue presented is one of contract interpretation and coverage under various health insurance policies. Those policies were issued by the Defendants to patients of the Plaintiff Health Providers who are now seeking payment for certain facility services under assignments of rights from those patients.

This Motion is being filed with the Court to assess those coverage issues and to rule on whether the Plaintiffs are entitled by contract to payment of the outstanding facility charges sought.

1

## FACTS

The facts of the within matter are simple and straight-forward. The dispute concerns the coverage interpretation of ERISA and non-ERISA health insurance policies. The Defendants are Insurance Carriers who are denying payment of facility fees to Plaintiffs who are single room ambulatory care centers.

The undersigned has attached the policy of the East Windsor Regional School District since the contractual language there under is representative of the language at issue.

The Plaintiffs are a predecessor and successor single operating room ambulatory care center that are both Medicare certified and wholly owed by Dr. Alexander Levin, a Pain Management Physician. Dr. Levin refers patients from his private medical practice to these entities in which he performs the surgical procedures.

The structure and function of this physician wholly owned ambulatory care center meets the definition of a surgical practice, as defined by *N.J.A.C.* 8:43A where no licensure by the New Jersey Department of Health and Senior Services is required and a separate facility fee may be charged.

The Doctor's profession fees and the anesthesia charges have been paid for all of the procedures for which a facility fee is sought by this litigation and until calendar year 2008, those facility fees also were being paid by the Defendants under the various health policies.

## LAW

### I. THE CONTRACT IN QUESTION ALLOWS FOR THE PAYMENT OF VARIOUS FACILITY FEE CHARGES AND INCLUDES PLAINTIFFS' FACILITIES BY DEFINITION.

This Summary Judgment Motion involves the interpretation of ERISA and non-ERISA health insurance policies. The contracts at issue concerning both are the same or similar in most respects. For the purpose of this Motion, it will suffice to utilize one of those policies to demonstrate the contract language with respect to covered and excluded services. The policy utilized in that regard is the one issued to the East Windsor Regional School District, effective July 1, 2006. (A copy of that policy is attached as Exhibit "A").

Page 23 of that Document contains a section entitled **Covered Expenses**. Two of the bullet point items therein included are important for a proper interpretation of the covered services. Those two items are as follows:

- charges made by a Free-Standing Surgical Facility, on its own behalf for medical care and treatment.

- charges made on its own behalf, by an Other Health Care Facility, including a Skilled Nursing Facility, a Rehabilitation Hospital or a subacute facility for medical care and treatment; except that for any day of Other Health Care Facility confinement, Covered Expenses will not include that portion of charges which are in excess of the Other Health Care Facility Daily Limit shown in The Schedule.

3

The Plaintiffs are a predecessor and successor single operating room ambulatory care center. They are both Medicare certified and wholly owed by Dr. Alexander Levin, a Pain Management Physician, who refers patients from his private medical practice to these entities in which he performs the surgical procedures. As long as the structure and function of this physician wholly owned ambulatory care center ("ASC") meets the definition of a surgical practice, as defined by *N.J.A.C.* 8:43A, no licensure by the New Jersey Department of Health and Senior Services is required and a separate facility fee may be charged. Who these medical entities are and the fact that they are operating lawfully under New Jersey law are not in question. Neither is the fact that these entities are entitled to charge a separate fee for the facility. (See copy of May 18, 1994 letter of Charles A. Janousek, the then Executive Director of the Board of Medical Examiners of the State of New Jersey to Joseph M. Gorrell, Esq. Mr. Gorrell had represented the predecessor facility, Brunswick Surgical Center, with regard to the subject matter of the letter. Attached as Exhibit "B").

Since these single room ambulatory centers are operated as an extension of the Doctor's medical practice and the State of New Jersey does not require licensure for the private practice of medicine under such circumstances, they are clearly a different kind of health care facility from that of a "Free-Standing Surgical Facility" as defined by Defendants' Insuring Agreement. These two types of facilities are recognized as being distinguishable from one another and as performing different roles in the healthcare system.

In order to be considered as a "Free-Standing Surgical Facility", as defined by the Defendants' group health policy, all of the requirements set forth on page 57 of that

4

policy must be met. A "Free-Standing Facility" is defined as a facility meeting all of the following requirements:

- it has a medical staff of Physicians, Nurses and licensed anesthesiologists;
- it maintains at least two operating rooms and one recovery room;
- it maintains diagnostic laboratory and x-ray facilities;
- it has equipment for emergency care;
- it has a blood supply;
- it maintains medical records;
- it has agreements with Hospitals for immediate acceptance of patients who need Hospital confinement on an inpatient basis; and
- it is licensed in accordance with the laws of the appropriate legally authorized agency.

A "Free-Standing Surgical Facility" is thus, necessarily to be distinguished from other facilities that may lawfully charge a separate facility fee but may be unlicensed and do not fulfill the requirements as set forth above. The facility charges for such other facilities may also be covered for an "Other Health Care Facility". Payment of those charges "made on its own behalf...", is not limited to Skilled Nursing Facilities, Rehabilitation Hospitals or even to sub-acute facilities. Payment of facility fees for medical care and treatment in those types of facilities are included in what is covered but the list is not exclusive as to all facilities for which such services are otherwise reimbursable. A single operating room ambulatory care center is not excluded.

The reference to covered expenses for "Other Health Care Facilities" is contained on page 23 of the policy. There is a further definition of the term on page 59 where it states under **Other Health Care Facility** that "The term Other Health Care Facility means a facility other than a Hospital or hospice facility. Examples of Other Health Care Facilities include, but are not limited to, licensed skilled nursing facilities, rehabilitation Hospitals and subacute facilities." The Plaintiffs are not a Hospital or hospice facility and are therefore not excluded under the definition provided by the Defendant Insurers.

It should also be noted that the coverage provided for payment of a facility fee for an "Other Health Care Facility", as stated on page 23 of the insuring agreement, is limited by "The Schedule" which is set forth on page 13 of the policy and made reference to under **Covered Expenses**. "The Schedule" references **Outpatient Facility Services** generically so as to include all such facility services and not just those rendered by a "Free-Standing Surgical Facility". There is no qualifying language that would restrict coverage for the stated services to only a licensed facility as defined in the policy. It states that it covers service charges for medical care and treatment in an "Operating Room, Recovery Room, Procedures Room, Treatment Room and Observation Room.", at "No Charge", whether in or out of network.

Furthermore, the policy does not exclude payment of facility charges, otherwise payable, based on the licensure status of the health provider. There are 45 separate single spaced exclusions set forth as bulleted paragraphs in the **Exclusions, Expenses Not Covered and General Limitations** section of the policy contained on pages 39 and 40. None of those exclusions or limitations makes any reference to a single operating room

ambulatory care center. If the facility charges for such entities are not covered, it is nowhere stated.

Curiously, the Defendants paid the Doctor for his professional fees and for the anesthesia associated with each of the various procedures for which the facility fee payments are now sought. The Defendants also have paid these facility fees in the past, presumably under the same or similar benefit contracts.