## II. <u>PLAINTIFFS ARE ENTITLED TO HAVE ALL AMBIGUITIES IN THE CONTRACT DECIDED IN THEIR FAVOR AND ARE ENTITLED TO SUMMARY JUDGMENT AS THE CONTRACT PROVIDES FOR PAYMENT OF THE CLAIMED FACILITY FEES.</u>

A plain reading of the contract is that it does not, "on its face", exclude coverage for the lawful facility fees that are being demanded in this litigation and therefore, those charges should be reimbursable to the Plaintiffs. If however, the Court believes that the contract is in any way ambiguous, those ambiguities should be resolved in favor of these Plaintiffs, providing coverage for the subject facility fees at issue.

As consistently held by the New Jersey Supreme Court, insurance policies are contacts of adhesion and, as such, are subject to special rules of interpretation. *Gibson v. Callaghan*, 158 *N.J.* 662, 669 (1999); *Longobardi v. Chubb Ins. Co.*, 121 *N.J.* 530, 537 (1990); *Meier v. New Jersey Life Ins. Co.,* 101 *N.J.* 597, 611-12 (1986). As the Supreme Court noted in *Allen v. Metropolitan Life Insurance Co.*, 44 *N.J.* 294, 305 (1965), an insurance company is an "expert in its field and its varied and complex instruments are prepared by it unilaterally whereas the assured or prospective assured is a layman unversed in insurance  provisions and practices." Therefore, when called on to interpret insurance policies, courts "assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness." *Voorhees v. Preferred Mut. Ins. Co.*, 128 *N.J.* 165, 175 (1992); see also *Sparks v. St. Paul Ins. Co.*, 100 *N.J.* 325, 335 (1985) (noting that terms of insurance policies are subject to "careful judicial scrutiny to avoid injury to the public").

The Supreme Court has propounded "certain well-established rules for interpreting insurance policies." *Gibson*, *supra*, 158 *N.J.* at 670. According to the

Supreme Court, "the words of an insurance policy are to be given their plain, ordinary meaning." *Ibid.* (citing *Voorhees*, *supra*, 128 *N.J.* at 175). Unless there is any ambiguity in the language of a policy, courts "should not write for the insured a better policy of insurance than the one purchased." *Longobardi*, *supra*, 121 *N.J.* at 537 (quoting *Walker rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529 (1989); see also Kampf v. Franklin Life Ins. Co.*, 33 *N.J.* 36, 43 (1960) ("When the terms of an insurance contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties.").

However, if there are any ambiguities in an insurance policy, it is "fundamental" that same are to be interpreted in favor of the insured. *Gibson*, *supra*, 158 *N.J.* at 670. See also *Cruz-Mendez v. ISU/Ins. Servs.*, 156, 571 (1999); *Doto v. Russo*, 140 *N.J.* 544, 556 (1995); *Hunt v. Hospital Serv. Plan of New Jersey*, 33 *N.J.* 98, 102 (1960). In construing ambiguous language or clauses in an insurance policy, a court should consider whether more precise language by the insurer "would have put the matter beyond reasonable question." *Doto*, *supra*, 140 N.J. at 557 (quoting *Mazzilli v. Accident & Cas. Ins. Co.*, 35 N.J. 1, 7 (1961); see also *Kook v. American Sur. Co.*, 88 *N.J. Super*. 43, 51 (App. Div. 1965) ("[C]onsideration should be given [about] whether alternative or more precise language, if used, would have put the matter beyond reasonable question.").

In the case sub judice, all the insurer had to do was to state that the facility fee for an unlicensed single operating room ambulatory care center was not covered, either in its section entitled **Covered Expenses** or in the **Exclusions, Expenses Not Covered and**

9

**General Limitations** section as part of the other 45 specifically excluded services. It did neither.

In addition, insurance policies "must be construed to comport with the reasonable expectations of the insured." *Gibson, supra*, 158 *N.J.* at 671. See also *American Motorists Ins. Co. v. L-C-A Sales Co.*, 155 *N.J.* 29, 41 (1998); *DiOrio v. New Jersey Mfrs. Ins. Co.*, 79 *N.J.* 257, 269, 398 *A.2d* 1274 (1979) ("Recognizing the position of laymen with respect to insurance policies prepared and marketed by the insurer, our courts have endorsed the principal of giving effect to the 'reasonable expectations' of the insured for the purpose of rendering a 'fair interpretation' of the boundaries of insurance coverage."); *Allen, supra*, 44 *N.J.* at 305 ("[An insured's] reasonable expectations in the transaction may not justly be frustrated and courts have properly molded their governing interpretative principles with that uppermost in mind."). This "canon of interpretation is consistent with judicial recognition of the 'unique nature' of insurance contracts. " *Gibson, supra*, 158 *N.J.* at 671. Furthermore, in exceptional circumstances, "even an unambiguous contract has been interpreted contrary to its plain meaning so as to fulfill the reasonable expectations of the insured. *Werner Indus. Inc. v. First State Ins. Co.*, 112 *N.J.* 30, 35-36 (1998); see also Robert E. Keeton, *Insurance Law Rights at Variance with Policy Provisions*, 83 *Harv. L. Rev.* 961, 967 (1970) ("the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.").

In the case *sub judice*, the insured would have a reasonable expectation of coverage if a fair reading of the insurance contract coverage language can be read to include such coverage. This would be especially so in this matter where the coverage definition itself reasonably can be read to include such coverage, the extensive exclusion section is silent regarding non-coverage, and where the doctor has been paid for performing the procedure and the anesthesia was paid.

As it regards policy exclusions that proscribe or limit coverage, the Supreme Court has observed that "[i]n general, insurance policy exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion." *American Motorists*, *supra*, 155 *N.J.* at 41 (quoting *Princeton Ins. Co. v. Chunmauang*, 151 *N.J.* 80, 95 (1997). Conversely, any clause that extends coverage is to be viewed broadly and liberally. *Mazzilli*, *supra*, 35 *N.J.* at 8; *Cobra Prods., Inc. v. Federal Ins. Co.*, 317 *N.J. Super.* 392, 400 (App. Div. 1998).

In the subject matter, the contract coverage in question is not limited just to payment of facility fees for "Free-Standing Surgical Facilities". It includes payment of those facility fees for "Other Health Care Facilities". Since the Plaintiffs are not excluded under the coverage definition extending coverage to those other health care facilities and since a reasonable reading of the definition would include Plaintiffs, the clause in the contract extending coverage is to be viewed broadly and liberally so as to include that coverage under standard contract interpretation.

11

### III. TO THE EXTENT THAT THE INSURANCE CONTRACT CONTAINS A 'DISCRETIONARY CLAUSE', IT IS INVALID AND THE REVIEW OF THE CONTRACT IS 'DE NOVO'.

*Firestone Tire & Rubber Co. v. Bruch*, 489 *U.S.* 101, 109 *S.Ct.* 948, 103 *L.Ed.2d* 80, sets out four principles as to the appropriate standard of judicial review under Sec. 1132(a)(1)(B): (1) A court should be "guided by principles of trust law," analogizing a plan administrator to a trustee and considering a benefit determination a fiduciary act, *id.*, at 111-113, 109 *S.Ct.* 948; (2) trust law principles require *de novo* review unless a benefits plan provides otherwise, *id.*, at 115, 109 *S.Ct.* 948; (3) where the plan so provides, by granting "the administrator or fiduciary discretionary authority to determine eligibility," "a deferential standard of review [is] appropriate," *id.*, at 111, 115, 109 *S.Ct.* 948; and (4) if the administrator or fiduciary having discretion "is operating under a conflict of interest, that conflict must be weighted as a 'facto[r] in determining whether there is an abuse of discretion,", *id.*, at 115, 109 *S.Ct.* 948. Pp. 2347-2348. (quoting *Metropolitan Life Insurance Company v. Glenn*, 128 *S.Ct.* 2343 at 2344.

While the defense has raised the specter of the "Discretionary Clause", which would limit review to the administrative record, I do not see any language in the attached copy of the policy provided me by the Defendants that would grant the administrator or fiduciary discretionary authority to determine eligibility. Furthermore, even if there was such a clause, it would be void and against public policy in New Jersey pursuant to *N.J.A.C.* 11:4-58. As of January 1, 2008, life and health forms previously filed, approved or acknowledged by the Commissioner that contain provisions not in compliance with the Rule are mandatorily deemed withdrawn and shall not be delivered, issued, executed or

renewed. Therefore, the review of the policy in this matter is *de novo* and normal contract principles should control its interpretation, without regard to any prior determination by any plan administrator.

Furthermore, even if a deferential standard of review was employed, the plan administrator's decision in the case *sub judice* would be arbitrary and capricious based on the clear language in the contract and the rules as they apply to standard contract interpretation, as cited above.

## IV. SUMMARY JUDGMENT IS APPROPRIATE UNDER BRILL STANDARD

When deciding a motion for summary judgment, determination whether there exists a genuine issue with respect to material facts challenged requires the motion judge to consider whether competent evidential materials presented, when viewed in light most favorable to nonmoving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of nonmoving party. *R.* 4:46-2. *Brill v. Guardian Life Insurance Company of America*, 142 *N.J.* 520, 523, 666 *A.2d* 146. (1995).

The "judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986) , 91 L.Ed.2d, 202, 212. Credibility determinations will continue to be made by a jury and not the judge. If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a "genuine" issue of material fact for purposes of *Rule* 4:46-2. *Liberty Lobby*, *supra*, 477 *U.S.* at 250, 106 *S.Ct* at 2511, 91 *L.Ed.*2d at 213. The import of our holding is that when the evidence "is so one-sided that one party must prevail as a matter of law," *Liberty Lobby*, *supra*, 477 *U.S.* at 252, 106 *S.Ct.* at 2512, 91 *L.Ed.*2d at 214, the trial court should not hesitate to grant summary judgment.

The question in the matter *sub judice* is one of contract interpretation and whether the payment of a legally charged facility fee is a covered expense under the health insurance policies issued by the Defendants. Clearly, this issue can be resolved by simply

14

reading the policy to determine the coverage afforded. Summary Judgment is therefore appropriate where the definition provided by the Defendants concerning payment of such fees can reasonably accommodate the Plaintiffs' facility and where it is not otherwise excluded in the contract.

## V. <u>CONCLUSION</u>

It is respectfully submitted that a proper review of the contract, applying standard contract principals of interpretation, compels the conclusion that coverage for payment of facility fees exists for different types of facilities and is just not limited to simply a "Free-Standing Surgical Facility" A single operating room ambulatory care center is covered based upon a fair interpretation of the contract language, thus entitling it to payment of its facility fees. Furthermore, since a single operating room ambulatory care center comes within the definition of an Other Health Care Facility as defined by the Defendants, the failure to exclude such coverage under the **Exclusions, Expenses Not Covered and General Limitations** section, containing some 45 separate exclusions over two single spaced typed pages, is fatal to Defendants' argument of exclusion.

Respectfully submitted,

By: s/ Gregory J. Lawrence
Gregory J. Lawrence  (GL5668)

Dated: March 10, 2010

16