## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

BRUNSWICK SURGICAL CENTER, LLC
and JERSEY AMBULATORY CENTER, LLC,

      Plaintiffs,

    vs.

CIGNA HEALTHCARE and CONNECTICUT
GENERAL LIFE INSURANCE COMPANY,

    Defendants.

Civil Action No.: 09-cv-05857 (AET)(LHG)

*Document electronically filed*

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS CIGNA HEALTHCARE OF NEW JERSEY, INC., IMPROPERLY PLEADED AS "CIGNA HEALTHCARE," AND CONNECTICUT GENERAL LIFE INSURANCE COMPANY'S CROSS-MOTION FOR SUMMARY JUDGMENT

---

E. Evans Wohlforth, Jr., Esq.
Jennifer Marino Thibodaux, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500
*Attorneys for Defendants CIGNA Healthcare
of New Jersey, Inc., improperly pleaded as
"CIGNA Healthcare," and Connecticut
General Life Insurance Company*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

PROCEDURAL HISTORY ............................................................................................. 2

STATEMENT OF FACTS ............................................................................................... 3

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT ................................................................................................................... 6

I.     THE SUMMARY PLAN DESCRIPTION DOES NOT INCLUDE COVERAGE FOR UNLICENSED SINGLE ROOM SURGICAL PRACTICES .................................. 6

     A.     At Best, Plaintiffs Come Close to the Definition of "Free-Standing Surgical Facility" But Do Not Satisfy It, Therefore, No Coverage is Provided ..................................................................................................... 8

     B.     Plaintiffs Are Not Entitled to Coverage As An "Other Health Care Facility" Because The Services Provided Are Outpatient ..................................... 9

II.     PLAINTIFFS CANNOT TAKE ADVANTAGE OF THE DOCTRINE OF CONTRA PROFERENTEM IN THIS CASE ................................................................ 17

III.     THE SPD IS NOT AMBIGUOUS BECAUSE IT WILL ADMIT OF ONLY ONE REASONABLE INTERPRETATION, BUT, IF IT WERE AMBIGUOUS, PLAINTIFFS' ARGUMENT ON THIS POINT DOOMS ITS OWN MOTION FOR SUMMARY JUDGMENT. ................................................................................. 22

IV.     THE EXISTENCE OF A DISCRETIONARY CLAUSE IS NOT RELEVANT FOR THE PURPOSES OF THIS MOTION .................................................................. 25

CONCLUSION ................................................................................................................ 28

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)..................................................................................... 5

Brill v. Guardian Life Ins. Co. of Am.,
    142 N.J. 520 (1995) ...................................................................................... 5

Continental Cas. Ins. Co. v. Darella Electric, Inc.,
    2010 U.S. Dist. LEXIS 11437 (D.N.J. Feb. 9, 2010) .................................. 23, 24, 25

Dade v. North American Philips Corp.,
    68 F.3d 1558 (3d Cir. 1995) ........................................................................ 16

Firestone Tire & Rubber Co. v. Bruch,
    489 U.S. 101 (1989)...................................................................................... 26

Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.,
    209 F.3d 252 (3d Cir. 2000) ........................................................................ 14

Garza v. Marine Transport Lines, Inc.,
    861 F.2d 23 (2d Cir. 1988) .......................................................................... 12

Glenpointe Assocs. v. Regency Sav. Bank,
    2006 U.S. Dist. LEXIS 74996 (D.N.J. Sept. 25, 2006) ............................... 6

GNB Battery Tech., Inc. v. Gould, Inc.,
    65 F.3d 615 (7th Cir. 1995) ......................................................................... 12

Hein v. FDIC,
    88 F.3d 210 (3d Cir. 1996) .......................................................................... 15

Henderson v. Morrone,
    214 Fed. App'x 209 (3d Cir. 2007) ............................................................. 8

Joseph Garcia, et al. v. Health Net of New Jersey,
    Docket No. A-2430-07T3, 2009 N.J. Super. Unpub. LEXIS 2858 (N.J. App.
    Div. Nov. 17, 2009), certif. denied, 2010 N.J. LEXIS 352 (N.J. Mar. 16, 2010).................... 21

Joseph Garcia, et al. v. Health Net of New Jersey,
    Docket No. C-37-06, 2007 N.J. Super. Unpub. LEXIS 2995 (N.J. Ch. Nov. 20,
    2007) ............................................................................................................. 20

Luby v. Teamsters Health, Welfare, & Pension Trust Funds,
    944 F.2d 1176 (3d Cir. 1991) ...................................................................... 26

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
   475 U.S. 574 (1986)............................................................................... 5

Metropolitan Life Ins. Co. v. Glenn,
   128 S. Ct. 2343 (2008)................................................................... 26, 27

Muhammad v. County Bank of Rehoboth Beach, Del.,
   189 N.J. 1 (2006) .................................................................................. 18

NL Indus. v. Commer. Union Ins. Co.,
   1993 U.S. Dist. LEXIS 21463 (D.N.J. May 27, 1993) ........................ 6

Penske Logistics, Inc. v. KLLM, Inc.,
   285 F. Supp. 2d 468 (D.N.J. 2003) ..................................................... 12

Perry v. Simplicity Eng'g,
   900 F.2d 963 (6th Cir. 1990) ............................................................... 26

Polizzi Meats v. Aetna Life & Cas. Co.,
   931 F. Supp. 328 (D.N.J. 1996) ............................................................ 6

Pyo v. Wicked Fashions, Inc.,
   2010 U.S. Dist. LEXIS 32746 (D.N.J. Mar. 31, 2010).................. 18, 22

Sempier v. Johnson and Higgins,
   45 F.3d 724 (3d Cir. 1995) .................................................................... 5

St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp.,
   2007 U.S. Dist. LEXIS 64648 (D.N.J. Aug. 29, 2007) ............... 6, 7, 16

Steigerwalt v. Terminix Int'l Co., LP,
   246 F. App'x. 798 (3d Cir. 2007) ........................................................ 10

Subaru of Am., Inc. v. DDB Worldwide Communs. Group,
   2010 U.S. Dist. LEXIS 29195 (D.N.J. Mar. 25, 2010)............. 5, 6, 23, 25

Tamarind Resort Associates v. Government of the Virgin Islands,
   138 F.3d 107 (3d Cir. 1998) .......................................................... 6, 23

Watt v. Alaska,
   451 U.S. 259 (1981)............................................................................. 10

**STATUTES**

N.J.A.C. 8:43A................................................................................................ 3

N.J.A.C. 8:43A-1.3 ................................................................................ 4, 5, 17

N.J.S.A. § 45:9-22.5a..................................................................................... 21

N.J.S.A. 26:2H-12(g)(5) ............................................................................ 4

N.J.S.A. 45:9-22.4 .................................................................................... 19

N.J.S.A. 45:9-22.5(c)(1) ........................................................................... 20

**OTHER AUTHORITIES**

2009 N.J. Laws 24 ................................................................................... 20

Restatement (Second) of Contracts, § 231 (1981) .............................. 23, 25

Williston on Contracts, § 32:11 ............................................................. 12

**RULES**

Fed. R. Civ. P. 56(c)(2) ............................................................................. 5

Federal Rule of Civil Procedure 12(b)(6) ................................................ 3

New Jersey Court Rule 4:46-2 ................................................................... 5

Defendants CIGNA Healthcare of New Jersey, Inc., improperly pleaded as "CIGNA HealthCare,"[1] and Connecticut General Life Insurance Company (collectively, "CIGNA Defendants") respectfully submit this memorandum of law in support of their opposition to Plaintiffs Brunswick Surgical Center, LLC and Jersey Ambulatory Center, LLC's (collectively, "Plaintiffs") Motion for Summary Judgment and in support of the CIGNA Defendants' Cross-Motion for Summary Judgment. For the reasons set forth below, the CIGNA Defendants respectfully request that Plaintiffs' motion be denied and that summary judgment be granted in favor of the CIGNA Defendants.

## PRELIMINARY STATEMENT

This matter is a simple insurance coverage dispute under an employee benefit plan, pending in this Court pursuant to its ERISA jurisdiction. The CIGNA Defendants provide insurance coverage to participants in certain employee benefit plans, the terms of which are set forth in a plan document known as a Summary Plan Description ("SPD"). See Affidavit of E. Evans Wohlforth, Jr., Esq. ("Wohlforth Aff."), Exhibit A (hereinafter, "SPD"). Plaintiffs are a predecessor and successor that operate a single room ambulatory care center, which is an unlicensed "surgical practice" under New Jersey law. See Plaintiffs' Statement of Material Facts, Docket Entry ("D.E.") # 20-1 at ¶ 3. Plaintiffs are owned by a Dr. Levin, who is not a party to this action. Id. Dr. Levin refers his patients to his ambulatory surgical center, where he performs medical procedures. Id. at ¶ 4. Plaintiffs state that the ambulatory surgical center is

---

[1] "CIGNA Healthcare" does not exist as a juridical entity. The CIGNA Defendants presume that Plaintiffs intended to name CIGNA Healthcare of New Jersey, Inc. Despite this correction, the CIGNA Defendants preserve and do not waive any arguments, rights and defenses regarding CIGNA Healthcare of New Jersey, Inc. including without limitation whether this entity is a proper defendant in this action, all of which are expressly reserved. Moreover, although the caption of all papers associated with Plaintiffs' instant motion references "CIGNA Corporation" as a defendant, "CIGNA Corporation" is not named as a defendant in the Second Amended Complaint.

"an extension of the Doctor's medical practice."  See Plaintiffs' Memorandum of Law in Support

of Motion for Summary Judgment ("Pl. Mem."), D.E. # 20-2 at 4.

Plaintiffs' entire case is based upon the allegation that the CIGNA Defendants have not

paid a facility fee to the ambulatory care center on behalf of certain plan participants who

received medical services there.  See Pl. Mem., D.E. # 20-2 at 1.  It is alleged that the plan

participants assigned their claims for payment to Plaintiffs.  Id.  Review of the SPD demonstrates

that the CIGNA Defendants do not provide coverage for facility fees for this type of ambulatory

surgical practice.  Therefore, it is respectfully submitted that Plaintiffs' motion for summary

judgment must be denied and the CIGNA Defendants' cross-motion for summary judgment must

be granted.

It is important to note that the coverage demanded here is for a "facility fee."  Coverage

for professional fees for Dr. Levin is not at issue.  As a general matter, hospitals and other types

of medical facilities charge separate facility fees and, as discussed below, these fees are generally

covered subject to the precise terms of the policy.  Doctors do not traditionally charge a separate

fee for the use of the offices in which they practice, however, and any such fee would not be

covered.  Here, Plaintiffs are actually a single room "extension of the Doctor's medical practice."

Pl. Mem., D.E. # 20-2 at 4.  The narrow coverage point is whether a separate facility fee for Dr.

Levin's one-room, "surgical center" in which he himself performs medical procedures is covered

under the plan.  A straightforward construction of the operative language compels the conclusion

that it is not.

## PROCEDURAL HISTORY

This case was commenced in the Superior Court of New Jersey, Law Division,

Middlesex County, on or about August 10, 2009.  D.E. # 1-2.  Approximately ten days later,

Plaintiffs filed an Amended Complaint.  Id.  The CIGNA Defendants removed the action to this

Court on November 16, 2009.  D.E. # 1.  On December 23, 2009, the CIGNA Defendants moved

to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6),

because Plaintiffs' claims were preempted by the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1101, et seq.  D.E. # 6.  While that motion was pending, Plaintiffs

filed a First Amended Complaint.  D.E. # 8.  Plaintiffs and the CIGNA Defendants agreed to

avoid motion practice and to withdraw, respectively, the First Amended Complaint and the

motion to dismiss, so that Plaintiffs could file a Second Amended Complaint properly pleaded

under ERISA.  See D.E. # 11, 12.  Plaintiffs filed a Second Amended Complaint on January 11,

2010, D.E. # 13, to which the CIGNA Defendants filed an Answer and Affirmative Defenses on

January 25, 2010, D.E. # 16.[2]

At the parties' initial conference before the Honorable Lois H. Goodman, U.S.M.J., it

was agreed that the parties would file cross-motions for summary judgment in an attempt to

reach a speedy resolution of the matter.  See D.E. # 14, 19.  Plaintiffs filed the instant motion on

March 11, 2010.  D.E. # 20.

## STATEMENT OF FACTS

Plaintiffs are a "a predecessor and successor single operating room ambulatory care

center."  Pl. Mem., D.E. # 20-2 at 2.  Plaintiffs contend that their facility qualifies as a single

operating room ambulatory care center under the definition of N.J.A.C. 8:43A.  Id.  This

regulation sets forth certain required characteristics, which may be taken as admitted by

Plaintiffs for the purposes of this motion.  The regulation defines a "surgical practice" as:

> a structure or suite of rooms which has the following
> characteristics:

---

[2] The so-called "First Amended Complaint" was really the second amended pleading and the
current complaint is really the third amendment.  Plaintiffs nomenclature is used in this motion,
however, for the sake of clarity.

> 1. No more than one room dedicated for use as an operating room which is specifically equipped to perform surgery, designed and constructed to accommodate invasive diagnostic and surgical procedures;
>
> 2. One or more postanesthesia care units or a dedicated recovery area where the patient may be closely monitored and observed until discharged; and
>
> 3. Established by a physician or physician professional association surgical practice solely for his/her/their private medical practice.

N.J.A.C. 8:43A-1.3.  Plaintiffs make much of the fact that the New Jersey Department of Health and Senior Services does not require a surgical practice to be licensed.  See Pl. Mem., D.E. # 20-2 at 4; N.J.S.A. 26:2H-12(g)(5) ("'Surgical practice' includes an unlicensed entity that is certified by the Centers for Medicare and Medicaid Services as an ambulatory surgery center provider.").  Plaintiffs admit that they are an unlicensed surgical practice.  See Pl. Mem., D.E. # 20-2 at 4.

Dr. Alexander Levin, a pain management physician, owns the predecessor and successor operating room ambulatory surgery center.  Id.; see also Wohlforth Aff., Exhibit B.  Dr. Levin refers patients from his private medical practice to his ambulatory surgery center to perform surgical procedures.  Pl. Mem., D.E. # 20-2 at 4.  After services are rendered, Plaintiffs submit claims for reimbursement to the CIGNA Defendants.  See Wohlforth Aff., Exhibit B. Specifically, the charges claimed are for the "ambulatory surgical center facility fee," which includes costs for the "operating [room], recovery [room], holding area, pharmacy, supplies."  Id. Plaintiffs claim lists "revenue code" 490, which is associated with services for "ambulatory surgical care."  See Wohlforth Aff., Exhibit C.  An "ambulatory care facility" is defined as

> a health care facility or a distinct part of a health care facility in which preventive, diagnostic, and treatment services are provided to persons who come to the facility to receive services and depart from the facility on the same day.

N.J.A.C. 8:43A-1.3 (emphasis added).  Therefore, it is undisputed that Plaintiffs provide ambulatory, outpatient services to its patients.

## LEGAL STANDARD

It is respectfully submitted that the summary judgment standard proffered by Plaintiffs, e.g., New Jersey Court Rule 4:46-2 and Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995), see Pl. Mem., D.E. # 20-3 at 7-8, is not controlling for the purposes of this motion. Instead, this Court must use the standard set forth in Federal Rule of Civil Procedure 56, which provides that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The trial court must determine whether there are genuine issues with regard to material facts that warrant a trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In making its ruling, the district court must consider the facts of the case in the light most favorable to the nonmoving party and give that party the benefit of any reasonable inference that a finder of fact might draw.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Sempier v. Johnson and Higgins, 45 F.3d 724, 727 (3d Cir. 1995) (en banc).  Summary judgment is appropriate where the court finds that the record "could not lead a rational trier of fact to find for the nonmoving party, [and] there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

Where the only genuine dispute is over law or legal interpretations, summary judgment may be granted, because such issues are properly determined by the Court in the first instance without reference to the trier of fact.  "'It seems to be a fundamental principle of contract law that disputes involving the interpretation of unambiguous contracts are resolvable as a matter of law, and are, therefore appropriate cases of summary judgment.'"  Subaru of Am., Inc. v. DDB

Worldwide Communs. Group, 2010 U.S. Dist. LEXIS 29195, at *4-5 (D.N.J. Mar. 25, 2010)

(quoting Tamarind Resort Associates v. Government of the Virgin Islands, 138 F.3d 107, 110, 39

V.I. 485 (3d Cir. 1998)).  See also Glenpointe Assocs. v. Regency Sav. Bank, 2006 U.S. Dist.

LEXIS 74996, *12 (D.N.J. Sept. 25, 2006) ("The interpretation or construction of a contract is a

legal question suitable for a decision on a motion for summary judgment by the court.  The

interpretation of the terms of a contract are decided by the court as a matter of law unless the

meaning is both unclear and dependent on conflicting testimony.") (internal quotation marks and

citations omitted); Polizzi Meats v. Aetna Life & Cas. Co., 931 F. Supp. 328, 334 (D.N.J. 1996)

(acknowledging that summary judgment may "turn[] only on a legal issue, e.g., a question of

contract interpretation"); cf. NL Indus. v. Commer. Union Ins. Co., 1993 U.S. Dist. LEXIS

21463, *9 (D.N.J. May 27, 1993) ("As an initial matter, the court notes that the question of

whether undisputed facts give rise to the existence of a 'claim,' as that term is defined in an

insurance policy, may be susceptible to summary judgment.  If a court faced with this question

determines that the pertinent policy language is unambiguous and the parties agree on the

underlying facts, then the court may render a legal determination as to whether an alleged event

constitutes a 'claim.'").

## **ARGUMENT**

## I.     **THE SUMMARY PLAN DESCRIPTION DOES NOT INCLUDE COVERAGE FOR UNLICENSED SINGLE ROOM SURGICAL PRACTICES**

As explained above, the CIGNA Defendants provide a plan participant with an SPD,

which sets forth a typical medical benefits policy providing coverage for certain, named, medical

expenses.  See, e.g., SPD.  It is, therefore, as in every coverage case, Plaintiffs' burden to

identify a specific policy term that grants coverage for the benefit in question.  St. Paul Fire &

Marine Ins. Co. v. Brother Int'l Corp., 2007 U.S. Dist. LEXIS 64648, *15 (D.N.J. Aug. 29,

2007).  The grant of coverage in the SPD appears in the list headed "Covered Expenses" and thus

only those enumerated, specific expenses are allowed for reimbursement.  <u>See</u> SPD at 23-32.

One of these covered expenses is for facility fees incurred by a "Free-Standing Surgical

Facility."  <u>See</u> SPD at 23.  Neither Plaintiffs' Second Amended Complaint nor any of their prior

pleadings identifies which provision in the SPD provides coverage for their facility fee.  Their

claim forms state that they are demanding payment for an "ambulatory surgical center facility

fee."  Wohlforth Aff., Ex. B.  Only in the parties' joint discovery plan do Plaintiffs offer their,

somewhat confused, statement as to their claim for coverage:

> <u>Plaintiffs' Statement:</u>
>
> *   *   *   *
>
> Although the various Provider Plans contain a definition of a
> "Free-Standing Surgical Facility" (i.e. A licensed facility), those
> same plans do not exclude the payment of facility fees to Plaintiffs
> as a result of those entities not being licensed."

Wohlforth Aff., Ex. D at ¶ 2(a).  And elsewhere in the Joint Plan:

> <u>Plaintiffs' Position:</u>
>
> From the Plaintiffs' perspective, each of the group insurance plans
> are the same or similar.  Each contains the definition of a 'Free-
> Standing Surgical Facility" without qualification so as to exclude
> payment of facility fees of unlicensed centers.  Therefore, all one
> has to do is read one of the policies to determine if the purported
> exclusion is present or not before being able to meaningfully
> discuss settlement.

<u>Id.</u> at ¶ 5.

Thus it appears that Plaintiffs initially intended to claim coverage as a Free-Standing

Surgical Facility, for which a facility fee is a covered expense.  <u>See</u> SPD at 23.  Although

Plaintiffs come close to qualifying as a Free-Standing Surgical Facility, they now appear to

concede that they miss the mark.  Their second attempt at coverage, raised for the first time on

this motion, is that they qualify as an Other Health Care Facility, also a defined policy term for which facility fees are a Covered Expense.  Id.  But, as discussed below, the type of facility Plaintiffs operate is clearly not within the SPD's definition of an Other Medical Care Facility either.  See id. at 59.  Therefore, Plaintiffs are not entitled to reimbursement from the CIGNA Defendants.

> **A.     At Best, Plaintiffs Come Close to the Definition of "Free-Standing Surgical Facility" But Do Not Satisfy It, Therefore, No Coverage is Provided**

The SPD enumerates various "Covered Expenses," including "charges made by a Free-Standing Surgical Facility, on its own behalf for medical care and treatment."  See SPD at 23-32 (emphasis added).  Until this motion was filed, Plaintiffs appeared to stake their claim on this Free-Standing Surgical Facility coverage.  See Wohlforth Aff., Ex. D at ¶¶ 2(a) and 5.  Plaintiffs appear to have now abandoned the contention that they are a Free-Standing Medical Facility. See Pl. Mem., D.E. # 20-2 at 5.  Among other points, Plaintiffs are not licensed and they lack multiple operating rooms, which are pre-requisites under the definition of a Free-Standing Surgical Facility in the SPD.  See D.E. # 20-2 at 5 (admitting that Plaintiffs are unlicensed and have only a single room); see SPD at 57 (defining Free-Standing Surgical Facility).

As discussed in the following section, Plaintiffs have changed horses and now claim that they are covered as an Other Health Care Facility.  See Pl. Mem., D.E. # 20-2 at 5-6.  For the reasons expressed below, this argument fails on its merits.  But the near miss quality of their earlier claim under the Free-Standing Surgical Facility precludes this argument at the threshold. The familiar maxim, *expressio unius est exclusio alterius*, applies here.  "[T]o express or include one thing implies the exclusion of the other, or of the alternative."  Henderson v. Morrone, 214 Fed. App'x 209, 213 (3d Cir. 2007) ("The doctrine . . . instructs that when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded.").

The SPD contains a carefully constructed and fully articulated grant of coverage for certain types of surgical facilities in the Free-Standing Surgical Facility provision.  See SPD at 23.  By not including a 'facility fee for an unlicensed, single room ambulatory care center' in the nine-page list of Covered Expenses, the SPD clearly indicates that such fees are outside the grant of coverage.  See id. at 23-32.  *Expressio unius* teaches that surgical facilities that almost but not quite meet the definition of a Free-Standing Surgical facility were intended to be outside the scope of coverage.  Such "near miss" facilities cannot then roam the SPD's other grants of coverage then offer broad and/or tortured interpretations that would subvert the clearly delineated grant of coverage in the Free-Standing Surgical Center clause, which could have, but did not, include them.  The SPD has stated what types of surgical facilities will be covered, and Plaintiffs plainly are not among them.  The balance of Plaintiffs' contentions amount to attempts to shove a square peg into a round hole.

There is, indeed, no genuine issue of material fact that Plaintiffs are not a Free-Standing Surgical Facility entitled to coverage.  It is relevant to the discussion that follows, however, to note that coverage under the Free-Standing Surgical Facility clause would include facility fees for treatment of ambulatory patients, i.e., on an outpatient basis, provided the other criteria of the Free-Standing Surgical Facility were met.

**B.    Plaintiffs Are Not Entitled to Coverage As An "Other Health Care Facility" Because The Services Provided Are Outpatient**

Plaintiffs now argue that their facility fees are covered under the Other Health Care Facility provision of the SPD.  See Pl. Mem., D.E. # 20-4 at 5-6; see SPD at 23.  Plaintiffs' argument flies in the face of the plain language of the SPD and mistakenly interprets the definition of an Other Health Care Facility as a catch-all provision.  For the reasons discussed below, Plaintiffs are not entitled to coverage as an Other Health Care Facility.  Indeed, if

Plaintiffs' reading of the Other Health Care Facility grant of coverage was correct, the results would be absurd and the clause would render nugatory other, carefully crafted provisions of the SPD, including the Free-Standing Surgical Facility clause on which they so recently relied.

The SPD provides coverage for facility fees charged by an Other Health Care Facility as follows:

> charges made on its own behalf, by an Other Health Care Facility, including a Skilled Nursing Facility, a Rehabilitation Hospital or a subacute facility for medical care and treatment; except that for any day of Other Health Care Facility confinement, Covered Expenses will not include that portion of charges which are in excess of the Other Health Care Facility Daily Limit shown in The Schedule.

SPD at 23.  The SPD defines an Other Health Care Facility as:

> The term Other Health Care Facility means a facility other than a Hospital or hospice facility.  Examples of Other Health Care Facilities include, but are not limited to, licensed skilled nursing facilities, rehabilitation Hospitals and subacute facilities.

Id. at 59.

A return to first principles of contract interpretation quickly establishes Plaintiffs' error. The term "Other Health Care Facility" in this SPD cannot be equated with the Plaintiffs' own description of itself as an "Ambulatory Surgical Facility."  Steigerwalt v. Terminix Int'l Co., LP, 246 F. App'x. 798, 801 (3d Cir. 2007) ("'Not all principles of interpretation are created equal; the plain meaning rule should always come first.'); see Watt v. Alaska, 451 U.S. 259, 266 (1981) (noting that, although the plain-meaning rule is not absolute, 'the words used, even in their literal sense, are the primary, and ordinarily most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else'").  "Other Health Care Facility" connotes a facility in which patients are cared for, as demonstrated by the examples listed in the policy: "licensed skilled nursing facilities, rehabilitation Hospitals and subacute facilities."  SPD at 59.

Other policy terms, discussed below, make clear that this care is provided on an inpatient basis. A "surgical facility" connotes a facility in which patients receive surgery.   An ambulatory surgical facility fits within the plain language meaning of "health care facility" only if one construes the latter term to include any facility in which a medical procedure takes place.  As discussed below, this interpretation would irretrievably distort the structure and meaning of the other provisions of the policy.  It is clear that Plaintiffs' contention that its ambulatory surgical center is an Other Health Care Facility under the plain language of the policy is error.

Plaintiffs argue that they are entitled to coverage as an Other Health Care Facility because the definition is not limited to "licensed skilled nursing facilities, rehabilitation Hospitals and subacute facilities."  See Pl. Mem., D.E. # 20-2 at 5; see SPD at 59.  The fact that the list of examples is not exclusive does not, of itself, mean that Plaintiffs' facility is an "Other Health Care Facility."  Plaintiffs must still show that their operating room is an "Other Health Care Facility" as the term is defined in the policy.  This they plainly cannot do.

The problem with Plaintiffs' argument is that it proves too much.  If Plaintiffs were correct, then any place in which a doctor provides services -- a private home, a gas station, a hotel, or a mall, or the archetypal doctor's office -- that is not listed as an example in the definition would qualify as an Other Health Care Facility.  Plaintiffs could then demand coverage for a separate facility fee for the services performed at these places.  Moreover, Plaintiffs' argument would render superfluous all the other carefully crafted grants of coverage for Covered Expenses.  As already noted, the grant of coverage for facility fees for a Free-Standing Surgical Facility has a list of elements, each of which must apply for coverage to exist. See SPD at 57.  A Free-Standing Surgical Facility must be (i) licensed, (ii) have multiple operating rooms, (iii) equipment for emergency care, blood supply, diagnostic testing and x-rays;

and (iv) agreements with hospitals for admission of patients needing inpatient care.  Id.  But

Plaintiffs argue that, because the list of examples of Other Health Care Facilities is not exclusive,

then they qualify as this type of facility.  Pl. Mem., D.E. # 20-2 at 5-6.  But if that were true, then

any facility disqualified from the definition of Free-Standing Surgical Facility for lack of one or

another of these qualifications, like Plaintiffs in this case, could merely invoke the Other Health

Care Facility clause to gain coverage for its facility fees.  This result would be absurd.

    This result is plainly contrary to basic contract law, which requires that the courts not

read contractual provisions in such a way that other provisions are rendered superfluous or

meaningless.  Penske Logistics, Inc. v. KLLM, Inc., 285 F. Supp. 2d 468, 474 (D.N.J. 2003)

("Under the principles of contract interpretation, a contract should not be given an interpretation

which renders a term or terms superfluous or meaningless.") (citing Williston on Contracts,

§ 32:11; GNB Battery Tech., Inc. v. Gould, Inc., 65 F.3d 615, 622 (7th Cir. 1995) ("A

contractual interpretation that gives reasonable meaning to all terms in an agreement is

preferable to an interpretation which gives no effect to some terms"); Garza v. Marine Transport

Lines, Inc., 861 F.2d 23, 27 (2d Cir. 1988).  There would have been no reason for the SPD to

define a Free-Standing Surgical Facility if any facility that failed to qualify would nonetheless be

covered as an Other Health Care Facility.  In fact, Plaintiffs' reading of Other Health Care

Facility would exponentially broaden the coverage under the SPD, permitting doctors to charge

two fees for every service they render: one for the service itself and one for the place in which

they happened to render the service.

    The implications of Plaintiffs' argument are, as noted, absurd, but their contention also

cannot be squared with the plain meaning of the other plan terms and the structure of the SPD as

a whole.  In fact, reading the various provisions of the SPD together reveals a sensible and

coherent structure with respect to facility fees.  The plan covers facility fees by a Hospital, which provides inpatient services.  See SPD at 23.  The plan also covers facility fees by an Other Health Care Facility that, like hospitals, provide inpatient services.  Id.  Free-Standing Surgical Facilities stand as an exception, wherein certain specialized facilities can charge a facility fee, even though they treat on an outpatient basis only, provided the surgical facility possesses the several required characteristics already noted.  Id.

The conclusion that Other Health Care Facility coverage is limited to inpatient facilities is evident from the language granting coverage.  Id.  The Other Health Care Facilities clause contains an express reference to the fact that it covers expenses for days of confinement in the facility, stating "for any day of Other Health Care Facility confinement, Covered Expenses will not include that portion of charges which are in excess of the Other Health Care Facility Daily Limit shown in The Schedule."  Id.  If the Other Health Care Facility clause covered expenses other than those attributable to a "day of Other Health Care Facility confinement," then such outpatient expenses would not be subject to this or any other limit.  That plainly cannot be the result intended and the Other Health Care Facility clause must be read, by its intrinsic terms, to cover inpatient facility fees only.

The list of examples of Other Health Care Facilities, while not exhaustive, also compels the conclusion that inpatient facility fees are the focus of this grant of coverage.  Licensed skilled nursing facilities are mentioned, as are rehabilitation hospitals and "subacute" health care facilities.  Id.  These plainly do not contemplate walk-in, walk-out surgical practices.  Other canons of contract construction provide authority for this otherwise obvious conclusion.  For example, *ejusdem generis* holds that, where the meaning of a general term, such as Other Health Care Facility, is illustrated with specific examples, the general term is construed as limited to

items of like kind.  Folger Adam Sec., Inc v. DeMatteis/MacGregor, J.V., 209 F.3d 252, 258 (3d

Cir. 2000) ("[u]nder the rule of *ejusdem generis*, the term 'other interest' would ordinarily be

limited to interests of the same kind as those enumerated, i.e., 'liens, mortgages, security

interests, encumbrances, liabilities, [and] claims.'").  To similar effect, the canon *nonscitur a*

*sociis* provides that contractual terms are to be interpreted consistently with terms that surround

them.  Id. (explaining that the canon of construction "instructs that a provision should not be

viewed in isolation but in light of the words that accompany it and give [it] meaning.") (internal

quotations and citations omitted).

　　　In light of the listed examples, it would make no sense to construe "Other Health Care

Facility" to include a doctor's office or the patient's house (in the case of a house call), where the

examples so clearly encompass inpatient services.  This conclusion is strengthened by the fact

that covered ambulatory surgical facilities, for which Plaintiffs almost *but not quite* qualify for

under the Free-Standing Surgical Facility clause, are expressly provided for elsewhere in the

contract.  See SPD at 23.  Outpatient surgical facilities are not like the examples given in the

Other Health Care Facility definition, they are addressed elsewhere in the SPD, and it would

distort the definition of Other Health Care Facility to attempt to force Plaintiffs within it.

　　　It is significant that the Other Health Care Facility definition expressly *excludes* hospitals

and hospice facilities, inpatient facilities for which coverage is granted elsewhere in the SPD.  Id.

at 59.  Of course, these are defined terms under the SPD and the subject of their own grants of

coverage.  See SPD at 57-58 (defining Hospice Care Program, Hospice Care Services, Hospice

Facility, and Hospital).  If hospitals and hospices were not expressly excluded from the Other

Health Care Facility definition, then they would fall within both their own express grants of

coverage and be contained within the Other Health Care Facility grant, by virtue of their

inpatient care function.  This would be confusing and lead to contradictory levels of coverage under the Schedule.  See SPD at 10, et seq.  But, there was no need to expressly exclude ambulatory surgical centers from the Other Health Care Facility definition, although they too are the subject of their own coverage clause, i.e., the Free-Standing Surgical Facility definition.  See id. at 57.  No confusion can result with respect to ambulatory surgical centers in the Other Health Care Facility clause, because the language of the Other Health Care Facility clause plainly deals with inpatient facilities.

Other sections of the SPD demonstrate that the Other Health Care Facility coverage is directed to inpatient facilities.  Plaintiffs cite to the Schedule, which is incorporated by reference in the grant of coverage as setting forth the amounts payable under each grant of coverage under the Covered Expenses.  See Pl. Mem., D.E. # 20-2 at 6-7; see SPD at 23.  The Schedule's only reference to Other Health Care Facilities provides for "Inpatient Services at Other Health Care Facilities," going on to state a sixty-day per year cap as referred to in the grant of coverage discussed previously.  SPD at 15.  The Schedule does not further specify  or even refer to other covered expenses at an Other Health Care Facility.  At any event, expenses for walk-in surgical centers are not expressed in "days."  The only remaining conclusion is that the Schedule, in the only place it addresses Other Health Care Facilities, specifies that those facilities are as inpatient care facilities and not ambulatory surgical centers.  Id.

It is easy to dispense with a number of other points Plaintiffs raise.  It is not material whether, as a matter of New Jersey regulatory law, Plaintiffs are permitted to charge a facility fee as an ambulatory surgical center even though they are unlicensed by the State of New Jersey. See Pl. Mem., D.E. # 20-2 at 6.  The issue is whether the plan provides coverage for those charges.  Hein v. FDIC, 88 F.3d 210, 215 (3d Cir. 1996) ("Only the words of the Plan itself can

create an entitlement to benefits.  Consequently, 'we are required to enforce the Plan as written

unless we can find a provision of ERISA that contains a contrary directive.'")  (quoting <u>Dade v.</u>

<u>North American Philips Corp.</u>, 68 F.3d 1558, 1562 (3d Cir. 1995)).  Plaintiffs refer to the

Schedule's list of Outpatient Facility Services.  Pl. Mem., D.E. #20-2 at 6.  The CIGNA

Defendants do not deny that some Covered Expenses include outpatient services.  The Free-

Standing Surgical Facility grant of coverage is one example.  <u>See</u> SPD at 23.  The point is that an

Other Health Care Facility does not encompass outpatient surgical services and the reference in

the Schedule to outpatient benefits does not change that.

Nor is Plaintiffs' contention well taken that no exclusion in the policy covers them.

Plaintiffs state "[i]f the facility charges for such entities are not covered, it is nowhere stated"

and allege that:

> In the case <u>sub judice</u>, all the insurer had to do was to state that the
> facility fee for an unlicensed single operating room ambulatory
> care center was not covered, either in its section entitled **Covered
> Expenses** or in the **Exclusions, Expenses Not Covered and
> General Limitations** section as part of the other 45 specifically
> excluded services.  It did not.

Pl. Mem., D.E. # 20-3 at 2-3.  Plaintiffs have it exactly backwards.  Before policy exclusions

come into play, Plaintiffs must first identify a grant of coverage that includes them.  In the

context of this motion, they have the burden of showing that they are within a specific grant of

coverage beyond material dispute.  <u>St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp.</u>, 2007

U.S. Dist. LEXIS 64648, *15 (D.N.J. Aug. 29, 2007) ("Initially, the burden is on the insured to

establish that it is entitled to coverage.).  This they plainly cannot do, and any discussion of

policy exclusions is beside the point.

In sum, Plaintiffs' interpretation of the SPD creates absurd results that cannot be squared

with the terms of the grant of coverage and the other terms in the SPD.  Plaintiffs concede that

they provide "ambulatory surgical care" for patients who "depart from the facility on the same day," i.e., outpatient services.  See Pl. Mem., D.E. # 20-2 at 2; N.J.A.C. 8:43A-1.3.  In addition, Plaintiffs submit claim forms to the CIGNA Defendants based upon a revenue code for outpatient, ambulatory surgical care.  See Wohlforth Aff., Exhibits B and C.  Therefore, the predecessor and successor entity simply does not qualify as an Other Health Care Facility that is entitled to coverage because it provides only outpatient services.

As a matter of plain language, an ambulatory surgical center is not an Other Health Care Facility.  The examples given in the SPD show this conclusion.  The structure of the policy shows this conclusion.  If Plaintiffs were correct, the very coverage provision they initially relied on, the Free-Standing Surgical Facility clause, would be superfluous.  Numerous plan terms show, including the Other Health Care Facility clause itself, that this grant of coverage is directed to inpatient care facilities, not ambulatory surgical centers.  The facility fee for Plaintiffs' ambulatory surgical center is plainly not covered under the terms of the SPD.

## II.   PLAINTIFFS CANNOT TAKE ADVANTAGE OF THE DOCTRINE OF CONTRA PROFERENTEM IN THIS CASE

Plaintiffs' argument that ambiguities must be construed against the drafter is a remarkable instance of disingenuousness.  First, as even Plaintiffs note, the *contra proferemtem* doctrine is used to remedy imbalances of bargaining power where the disappointed promisee has entered into a contract of adhesion.  See Pl. Mem., D.E. # 20-3 at 1-4.  Whatever one might say about Plaintiffs' patients, the SPD in this case was not a contract of adhesion with respect to this professional medical provider.  Second, Plaintiffs fail to mention that this very issue has been a battleground in the New Jersey courts, legislature, and the regulatory forum for years.  As the discussion in this section will show, medical service providers can hardly claim adhesion, imbalance of bargaining power, surprise, or unfairness of any kind when it comes to self-referred

facility fees.  Any ambiguity, and the CIGNA Defendants contend that there is none, should not

be automatically construed in Plaintiffs' favor.

The contract law surrounding so-called 'contracts of adhesion' was very recently

summarized by the District Court as follows:

> That term is commonly applied to agreements that are "presented
> on a take-it-or-leave-it basis, commonly in a standardized printed
> form, without opportunity for the 'adhering' party to negotiate
> except perhaps on a few particulars."

Pyo v. Wicked Fashions, Inc., 2010 U.S. Dist. LEXIS 32746, *13 (D.N.J. Mar. 31, 2010)

(quoting Muhammad v. County Bank of Rehoboth Beach, Del., 189 N.J. 1, 96-97 (2006)).

The 'take-it-or-leave-it' nature of the contract does not, however, end the inquiry, as the

Pyo Court explained:

> Such agreements "necessarily involve indicia of procedural
> unconscionability," but "[t]he determination that a contract is one
> of adhesion … is the beginning, not the end, of the inquiry into
> whether a contract, or any specific term therein, should be deemed
> unenforceable based on policy considerations."  Rather, a court
> evaluating whether a contract of adhesion is procedurally
> unconscionable must look "not only to the take-it-or-leave-it nature
> or the standardized form of the document but also to (1) the subject
> matter of the contract, (2) the parties' relative bargaining positions,
> (3) the degree of economic compulsion motivating the 'adhering'
> party, and (4) the public interests affected by the contract."

Id. (quoting Muhammad, 189 N.J. at 96-97).

Patients with health insurance received through their employer may, *arguendo,* be parties

to a take-it-or-leave-it contractual relationship.  Medical providers clearly are not.  Medical

providers can and do inquire what insurance their patients may have.  Providers are free to

decline to accept an assignment of benefits from patients.  Providers can, and frequently do,

decline to treat patients based on which insurance they have.  The proposition that Dr. Levin,

seeking here to receive a facility fee in addition to a professional fee, was forced to enter into this

contract is preposterous.  In fact, Plaintiffs voluntarily accepted an assignment of benefits from their patients as an extension of Dr. Levin's professional practice.  See Pl. Mem., D.E. # 20-2 at 1.  Indeed, Plaintiffs have alleged that their damages are still growing, which establishes that *Dr. Levin continues to self-refer patients to his ambulatory surgical practice* despite knowing full well that the CIGNA Defendants will not cover the facility fee.  See Second Amended Compl., D.E. # 13 at ¶ 5.

This is not the situation *contra proferentem* or the doctrine of adhesion was meant to address.  Plaintiffs, as assignees of plan participants, are entitled to contest the CIGNA Defendants' reading of the plan terms.  They should not be heard to argue that they are the victims of adhesion contracts or any other form of procedural unconscionability.  Nor, having promulgated a strained argument that there is ambiguity in the plan terms, should Plaintiffs be heard to argue that those terms should be interpreted with a special bias in their favor.  Plaintiffs' own pleading shows that they continue to voluntarily accrue claims with the hope of coercing the CIGNA Defendants through the power of this Court to pay them.  Id.

In fact, the practice of doctors referring patients to facilities they own for the purpose of collecting a facility fee has been a battleground in the State of New Jersey for many years because of the obvious conflict of interest inherent in this practice.  In 1989, the New Jersey Legislature enacted the Codey Law, N.J.S.A. 45:9-22.4, et seq., which contained a broad prohibition on practitioners' referral of patients for "health care services" to a facility where the practitioner or an immediate family member has a "significant beneficial interest," which includes any financial interest.  In its definition of "health care services," the Codey Law expressly forbade referrals to facilities that provide "ambulatory surgery."  See N.J.S.A. 45:9-22.4.  In 1991, doctors won an exception to the self-referral prohibition, the so-called "extension

of practice" exception, which permits referrals for a health care service that is provided at the practitioner's medical office and for which the patient is billed directly by the practitioner.  See N.J.S.A. 45:9-22.5(c)(1).

The widespread practice of patient referrals by physicians to facilities where they have a financial interest was placed in jeopardy in November 2007 pursuant to a ruling of the New Jersey Chancery Court in Joseph Garcia, et al. v. Health Net of New Jersey, Docket No. C-37-06, 2007 N.J. Super. Unpub. LEXIS 2995 (N.J. Ch. Nov. 20, 2007).  In Garcia, a number of physicians owned varying percentages of an ambulatory surgical center to which the physicians referred medically appropriate patients for surgery.  Id. at *2.  Health Net claimed that the physicians' referrals to their surgery center were prohibited by the Codey Law, and therefore, the surgery center's reimbursement claims were unlawful and in violation of New Jersey insurance fraud laws.  Id. at *4.  The Chancery Judge rejected the physicians' reliance on the 1997 Board of Medical Examiners' advisory opinion, holding

> the language of the statute is plain and simple, and can yield no other conclusion but that the defendant-doctors' referrals of their private patients to the ambulatory surgical center, in which each of them has a significant beneficial interest, runs afoul of the Codey Act ban on such referrals. . . .  The Court can only deal with the law as it is and the facts as I find them to be.  Here, the facts plainly establish non-compliance with the Codey Act ban on self-referrals.

Id. at *16.

The Garcia decision created an outcry throughout the medical community and caused members of the State Senate and Assembly to propose legislation during 2008 to address physician-owned surgical practices and surgical facilities.  On March 21, 2009, Governor Corzine signed into law certain amendments to the Codey Law.  See 2009 N.J. Laws 24. Relevant to this case, the amendment provided that referrals to existing single operating room

surgical practices prior to March 21, 2009 will be deemed to be compliant with the Codey Law if the physician personally performed the procedure.  See N.J.S.A. § 45:9-22.5a.  Following the Codey Law amendments, the Garcia case continued, with Health Net contending that referrals prior to the Codey Law amendments amounted to insurance fraud.  The Appellate Division rejected this argument in November 2009, and there the issue rests today.  Joseph Garcia, et al. v. Health Net of New Jersey, Docket No. A-2430-07T3, 2009 N.J. Super. Unpub. LEXIS 2858 (N.J. App. Div. Nov. 17, 2009), certif. denied, 2010 N.J. LEXIS 352 (N.J. Mar. 16, 2010).

Compliance with the Codey Law is, of course, not the point in this case.  The issue on this motion is whether the facility fees are covered under the SPD, regardless of whether these charges and the self-referral is legal under state law.[3]  The relevance of the history recounted above is that the years of controversy over "extension of practice" referrals by doctors to their own facilities must finally sink Plaintiffs' contract of adhesion, *contra proferentem* argument. See Pl. Mem., D.E. # 20-2 at 4.  Doctors generally and Plaintiffs in particular, know exactly what they are doing when they "refer" patients to "facilities" that are attached their own medical practice.  Indeed, Plaintiffs in this case state in their motion that their ambulatory surgical facility is an "extension of the Doctor's medical practice," their choice of language showing their awareness of this applicable law and its implications.  See id.

As noted, Plaintiffs continue, voluntarily, to treat patients with coverage provided by the CIGNA Defendants.  See Second Amended Compl., D.E. # 13 at ¶ 5.  Obviously, Plaintiffs are aware that the CIGNA Defendants deny coverage for their claimed facility fees.  The entire issue of extension-of-practice referrals and facility fees has been prominent in the medical community

---

[3] If this case survives summary judgment, Plaintiffs will have the burden of showing that their facility fees are legal under state law by, inter alia, showing that the referring physician actually performed the procedures for which the claims are submitted and thus complied with the Codey Law.

in New Jersey for an extended period, and the language of Plaintiffs' motion shows their awareness.  There is no "indicia of procedural unconscionability" here that would support an argument that this is a contract of adhesion.  Pyo, 2010 U.S. Dist. LEXIS 32746 at *13.  Other factors noted in the Pyo case favor a neutral reading of the contractual language, not one biased toward these Plaintiffs.  There was no economic compulsion motivating Plaintiffs.  Id.  The subject matter of the contract, id., is not access to medical care by employees, but whether the employees' assignees, professional service providers, can obtain coverage from the CIGNA Defendants for both a professional fee and a facility fee for the same service.  The relative bargaining position of the parties, id., is revealed in the fact that Plaintiffs freely continue to accept claims against the CIGNA Defendants apparently in the hope that this Court will force the CIGNA Defendants to adopt their distorted reading of the plan terms.  See Second Amended Compl., D.E. # 13 at ¶ 5.  This is not the stuff of the doctrines of *contra proferentem* nor of the doctrine of adhesion.  Plaintiffs' argument that the SPD language should be read in their favor regardless of the actual meaning of its terms should be rejected.

III.   **THE SPD IS NOT AMBIGUOUS BECAUSE IT WILL ADMIT OF ONLY ONE REASONABLE INTERPRETATION, BUT, IF IT WERE AMBIGUOUS, PLAINTIFFS' ARGUMENT ON THIS POINT DOOMS ITS OWN MOTION FOR SUMMARY JUDGMENT**

Plaintiffs allege that "[i]f . . . the Court believes that the contract is in any way ambiguous, those ambiguities should be resolved in favor of these Plaintiffs, providing coverage for the subject facility fees at issue."  Pl. Mem., D.E. # 20-3 at 1.  Plaintiffs' assertion that the SPD is ambiguous flies in the face of their argument that their motion for summary judgment should be granted.  In fact, as a matter of law, there is no ambiguity in the SPD, because there is only one reading of it that is reasonable.  But, if it were otherwise and the SPD were capable of multiple interpretations, material issues of fact would exist and summary judgment would have

to be denied to all parties.  For the reasons stated below, however, the CIGNA Defendants

submit that the SPD is not ambiguous, therefore, Plaintiffs' motion for summary judgment

should be denied, and the cross-motion should be granted.

"'In determining whether contractual language is ambiguous, courts should consider the

contract language, the proffers of the parties, and the extrinsic evidence offered in support of

each interpretation.'"  Subaru of Am., Inc., 2010 U.S. Dist. LEXIS 29195, at *5 (citing Tamarind

Resort Associates, 138 F.3d at 110).  A contract is considered unambiguous if only one

reasonable construction is available.  Id.  Whether an interpretation of a given term is reasonable

is determined in the context of the entire agreement -- "an interpretation which gives a

reasonable, lawful and effective meaning to all the terms is preferred to an interpretation which

leaves a part unreasonable, unlawful, or of no effect."  Id. (citing Restatement (Second) of

Contracts, § 231 (1981)).

In Continental Cas. Ins. Co. v. Darella Electric, Inc., 2010 U.S. Dist. LEXIS 11437, *13

(D.N.J. Feb. 9, 2010), in adjudicating a motion for summary judgment, the Court declined to

consider extrinsic evidence in interpreting an insurance contract.  The Court stated:

> The court makes the determination whether a contractual term is
> clear or ambiguous.  An ambiguity exists if the terms of the
> contract are susceptible to at least two reasonable alternative
> interpretations.  To determine the meaning of the terms of an
> agreement by the objective manifestations of the parties' intent, the
> terms of the contract must be given their "plain and ordinary
> meaning."  The court should examine the document as a whole and
> the court should not torture the language of a contract to create
> ambiguity.

Id. at *14.

In that case, the express terms of the insurance contract required a waiver of subrogation

rights as to the "parties insured."  Id.  The Court gave the quoted language its plain and ordinary

meaning, "which read in the context of the entire provision, refers to those for which insurance

coverage was to be obtained: 'Owner, Builder, subcontractors and sub-contractors.'" Id. The Court rejected the interpretation of "parties insured" that rendered this list of insured as "too expansive," characterizing such an interpretation as "tortured" and repugnant to the plain language of the insurance contract. Id.

Similarly, this Court need only consider the plain language of the SPD to determine that the contract is not ambiguous, because only one reasonable interpretation is available that is consistent with the plain language of the disputed term and the other terms of the SPD when read together. The points made above regarding interpretation of the plan language need not be repeated in detail. A surgical facility is not a health care facility as a matter of plain meaning. The illustrative examples only strengthen the conclusion that an Other Health Care Facility is one in which a patient received inpatient *care* rather than surgery. Plaintiffs' ambulatory surgical facility is a "near miss" for the Free-Standing Surgical Facility grant of coverage. Granting coverage under the Other Health Care Facility clause would eviscerate the requirements of the Free-Standing Surgical Facility grant of coverage. Numerous terms, including those in the Schedule, can only be reasonably understood if Other Health Care Facility is directed to inpatient facilities.

Plaintiffs jump right to the Schedule, point to any term of coverage for "outpatient services," and then allege that they are entitled to coverage as a "near miss" Free-Standing Surgical Facility. Pl. Mem., D.E. # 20-2 at 5-6. But the actual grant of coverage in the SPD is that which appears in the list of Covered Benefits. See SPD at 23. The Schedule specifies what limits, deductions, and other qualification may apply, but, without a specific grant of coverage as a Covered Expense, Plaintiffs' reference to the Schedule is unavailing. See SPD at 10, et seq. Plaintiffs certainly cannot consult the Schedule in isolation as an alternate form of coverage.

Thus, the only reasonable reading of the SPD does not provide coverage for Plaintiffs' ambulatory surgical center under either the Free-Standing Surgical Center or the Other Health Care facility clause.  This is the only interpretation of the contract that gives "reasonable, lawful and effective meaning to all the terms" of the SPD.  <u>Subaru of Am., Inc.</u>, 2010 U.S. Dist. LEXIS 29195 at *5 (citing Restatement (Second) of Contracts, § 231 (1981)).  Just as the Court in <u>Continental Cas. Ins. Co.</u>, this Court should look only to the plain language of the contract to interpret its meaning because no other interpretation is available -- nor is extrinsic evidence necessary -- and deny Plaintiffs' motion for summary judgment.

Yet, if the Court determines that the SPD is ambiguous because more than one interpretation of its language is available, then the Court must deny Plaintiffs' summary judgment.  If the contract language is vague, then, by definition, genuine issues of material facts exist.  The result of such an alleged ambiguity, resulting in disputed facts, is not to award coverage to Plaintiffs for a facility fee at Dr. Levin's unlicensed ambulatory surgical practice.  If the Court were to determine that the SPD is ambiguous, it simply must deny the motions for summary judgment and proceed with the litigation.  For the reasons discussed above, however, the CIGNA Defendants submit that the plain language of the SPD is not ambiguous, only one reasonable interpretation is possible, and Plaintiffs do not qualify for coverage.

## IV.    THE EXISTENCE OF A DISCRETIONARY CLAUSE IS NOT RELEVANT FOR THE PURPOSES OF THIS MOTION

Plaintiffs argue that if the "insurance contract contains a 'discretionary clause,' it is invalid and the review of the contract is 'de novo.'"  Pl. Mem., D.E. # 20-3 at 5.  Plaintiffs contend that there is no language in the SPD to limit review to the administrative record.  <u>Id.</u>  Moreover, they further allege that if a discretionary clause does exist, it violates public policy.  <u>Id.</u>  Plaintiffs' argument is irrelevant for adjudicating their motion for summary judgment, which

is focused solely on interpreting the language of the SPD to determining it includes coverage for their facility fee.  As discussed, Plaintiffs have not carried their burden on the motion.

Discretionary clauses are widely employed in ERISA plans pursuant to decades of United State Supreme Court law.  See, e.g., Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  These clauses permit a claims administrator a certain range of discretion in administering the Plan and applying its terms to claims for benefits.  The discretionary clause is typically relevant when a specific denial of benefits is challenged, because the district court will determine whether the claims administrator abused its discretion in administering the Plan and interpreting its terms to deny employee benefits.  The question of abuse of discretion has no application here where the issue is the general and purely legal one of the scope of coverage under the terms of the Plan.

It is also true, though still irrelevant to this motion, that well-settled ERISA law limits the evidentiary record to that which was before the claims administrator.  See, e.g., Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2351 (2008).  Plaintiffs are wrong that the question of what the court will consider depends on whether the standard of review is abuse of discretion under the Plan terms or, as is sometimes the case, the Plan provides for de novo review.  See Luby v. Teamsters Health, Welfare, & Pension Trust Funds, 944 F.2d 1176, 1185 (3d Cir. 1991); see also Perry v. Simplicity Eng'g, 900 F.2d 963, 966 (6th Cir. 1990).   The fundamental premise of ERISA benefits litigation is that the District Court sits in an appellate role to determine whether the claim administrator properly adjudicated a claim for plan benefits in accordance with the terms of the plan.  See Perry, 900 F.2d at 966 (the role of the reviewing federal court is to determine whether the administrator or fiduciary made the "correct decision").  Implicit in this

principle is that, subject to some exceptions, the evidentiary universe is limited to what was in front of the claims administrator.  See, e.g., Metropolitan Life Ins. Co., 128 S. Ct. at 2351.

Simply put, the discretionary clause has nothing to do with Plaintiffs' motion for summary judgment (or the CIGNA Defendants' cross-motion for summary judgment).  Plaintiffs are wrong as a matter of law that discretionary clauses in ERISA plans are barred by New Jersey state insurance regulations and they are wrong that such clauses are against public policy.  Moreover, the fact that such a clause does not appear in the SPD does not mean that the plan administrators for these patients lacked discretion, as the discretionary language frequently appears in other plan documents.  The foregoing points are merely stated by way of explanation and to reserve the CIGNA Defendants' rights in that regard.  The issue need not detain the Court further.

Consequently, the discretionary clause is not relevant to the adjudication of this motion.  The claims administrator's discretion is not at issue, but rather the availability of coverage to an unlicensed surgical practice according to the SPD.  As such, the CIGNA Defendants respectfully request that this Court deny Plaintiffs' motion for summary judgment and grant the cross-motion for summary judgment.

## CONCLUSION

For the reasons set forth above, the CIGNA Defendants respectfully request that

Plaintiffs' Motion for Summary Judgment be denied and that the CIGNA Defendants' Cross-

Motion for Summary Judgment be granted.

**GIBBONS P.C.**

By:   s/E. Evans Wohlforth, Jr.
E. Evans Wohlforth, Jr.
Jennifer Marino Thibodaux
One Gateway Center
Newark, New Jersey 07102-5310
Tel:  (973) 596-4879
Fax:  (973) 639-6486
*Attorneys for Defendants Life Insurance Company*
*of North America, improperly pleaded as "CIGNA*
*Healthcare," and Connecticut General Life*
*Insurance Company*

Dated: April 19, 2010