**PACIFICO & LAWRENCE**
Attorneys at Law
705 AMBOY AVENUE
WOODBRIDGE, N.J. 07095
p (732) 634-5550 f (732) 218-5189

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRUNSWICK SURGICAL CENTER, LLP and JERSEY AMBULATORY CENTER, LLC, | Case No. 09-cv-5857 |
| Plaintiffs, | Civil Action |
| vs. | |
| CIGNA CORPORATION and its subsidiaries CIGNA HEALTHCARE OF NEW JERSEY and CONNECTICUT GENERAL LIFE INSURANCE COMPANY, | MEMORANDUM OF LAW REPLYING TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| Defendants. | |

This is a Reply to the Opposition submitted by the Defendants in this matter. It seeks to refocus the contractual issues and demonstrate that a plain reading of the contracts in question would provide coverage as a matter of law.

Plaintiffs are not a "near miss" Free Standing Surgical Facility as suggested by Defendants at pages 8-9 of their Memorandum of Law. Plaintiffs have never demanded coverage as a "Free-Standing" facility as defined by the various contracts and have never represented themselves as such.

The structure and function of Plaintiffs' facility is distinct from a licensed facility under New Jersey law and is recognized by *N.J.A.C.* 8:43A as a surgical practice. It is

1

wholly owned by Dr. Alexander Levin and is exclusively used to treat only his patients. As such, it is an extension of his medical office where no licensure is necessary and for which the charging of a separate facility fee is permitted. For the purpose of this Motion, these facts have been conceded.

The reference made in the Opposition Brief to the ruling in *Joseph Garcia, et al. v. Health Net of New Jersey*, Docket no. C-37-06, 2007 *N.J. Super*. Unpub. LEXIS 2995 (N.J. Ch. Nov. 20, 2007) is totally inapposite when comparing the two kinds of facilities. Plaintiffs have always fit into the 1991 exception to the Codey Law's prohibition against self-referral and are not free-standing facilities. Thus, any comparison with *Garcia*, *supra*, is not relevant to a discussion of the coverage issues in this matter.

Plaintiffs' facility is not a separate structure ("Free-Standing") from the Doctor's medical office as existed in *Garcia*. The one room operating suite is adjacent and a part of the office structure. Unlike a licensed facility, to which a doctor owner can make referrals and someone else perform the surgical procedures, only Dr. Levin can perform the procedures under a *N.J.A.C.* 8:43A sanctioned facility, and then only to his patients. Any suggestion that the Plaintiffs in this case would not have a reasonable expectation of being paid the facility fee in light of the issues raised in *Garcia* is akin to comparing "apples with oranges".

In fact, Brunswick Surgical was paid uninterruptedly under the various contracts for nine (9) years prior to the abrupt cessation of regular payments in February of 2008, except for sporadic payment thereafter. A certification from the office/billing manager is attached as Plaintiffs' Exhibit "A" concerning receipt of those payments. Also attached as Plaintiffs' Joint Exhibit "B" are various PROVIDER EXPLANATION OF MEDICAL

PAYMENTS REPORTS demonstrating facility payments on 3/6/08 to patient #109200, on 3/17/08 to patient #157333, on 4/17/08 to patient #109200, on 4/18/08 to patient #157333, on 5/15/09 to patient #0000010200, on 5/28/09 to patient #0000157333, on 5/28/09 to patient #0000082900 and on 4/29/10 to patient #0000094700. The last payment cited being a correction of a previously denied claim. Consequently, Counsel's attribution of Plaintiffs' expectations for coverage under these circumstances is misplaced.

Furthermore, the suggestion that anywhere a doctor decides to perform a service would create a facility fee and an obligation for payment, thereby nullifying other provisions of the contract, is rank hyperbole. Only facilities recognized by the Department of Health and Human Services would be entitled to payment of a facility fee. That is why the separate status of Plaintiffs' facilities under *N.J.A.C.* 8:43A has been emphasized in this Motion.

As for the argument that an "Other Health Care" facility is restricted to in-patient facilities, and not ambulatory outpatient services, this interpretation is not borne out by the plain language of the contract. Payment for the services provided by an "Other Health Care Facility" is subject to "The Schedule" set forth on page 13 of the policy. *See* "Wohlforth Aff.", Exhibit A. "The Schedule" references **OUT PATIENT FACILITY SERVICES** (emphasis added) generically so as to include all such facility services and not just those rendered by a "Free-Standing Surgical Facility" or as a result of inpatient confinement. To argue otherwise is to ignore the stated language in the Policy.

Again, and as stated in the main Brief submitted with the Motion, there is no qualifying language that would restrict coverage for the stated services to only a licensed facility as defined in the policy. The language says that it covers service charges for

medical care and treatment in an "Operation Room, Recovery Room, Procedures Room, Treatment Room and Observation Room", at "No Charge" to the patient, whether in or out of network. It specifically references Out Patient Facility Services so respectfully, it would be inappropriate to apply the doctrine of *ejusden generis* to define "Other Health Care Facilities" to exclude out-patient services, especially when the examples provided are not meant to be exhaustive.

Clearly, the term "Other Health Care Facilities" includes facilities providing both in-patient and out-patient care. Included in the definition provided on page 23 of the contract is a statement that these types of facilities include a Skilled Nursing Facility, a Rehabilitation Hospital or a subacute facility for medical care and treatment. Those types of in-patient facilities were specifically set forth and identified as part of the universe of "Other Health Care Facility" entities for which a facility fee could be charged. Payment for **Inpatient Services** at Other Health Care Facilities (emphasis added) is limited by "The Schedule" on page 15 of the contract. The limitation on payment is specific as to inpatient services only; thus making a distinction between in-patient and out-patient services covered under the "Other Health Care Facility" grant of coverage. *See* "Wohlforth Aff.", Exhibit A to reference the Summary Plan Description ("SPD").

Consequently, the contract contemplates both out-patient and in-patient "Other Health Care" facilities. A facility that has a lawful right under New Jersey law to charge a facility charge and that is not a "Free-Standing Surgical Facility", is necessarily included in that category for which coverage is afforded under the definition of "Other Health Care Facility". Plaintiffs are not "near misses" with regard to the definition of a "Free-Standing Surgical Facility" because the right to be paid the facility charge exists by virtue

of the definition provided with respect to an "Other Health Care Facility" that grants coverage and by virtue of *N.J.A.C.* 8:43A.

The Plaintiffs have identified the contractual language in the policy that provides coverage for payment of its facility fees. In the case *sub judice*, the insured would have a reasonable expectation of coverage if a fair reading of the insurance contract coverage language can be read to include such coverage. Any clause that extends coverage is to be viewed broadly and liberally. *Mazzilli v. Accident & Cas.* 35 N.J. at 8 (1961); *Cobra Prods., Inc. v. Federal Ins. Co.*, 317 N.J. Super. 392, 400 (App. Div. 1998). Coverage should not be denied by the use of hyper-technical rules of contract interpretation or doctrines with impressive Latin names, that seek to write a better contract for the Defendants than the one written. It is the function of a court to enforce the contract as written and not to make a better contract for either of the parties. *Kampf v. Franklin Life Ins. Co.* 33 N.J. 36, 43 (1960).

The Plaintiff medical providers have taken Assignments from the patients for the services rendered to those patients and now "stand in their shoes" with respect to any rights or obligations in relation to the insurance carriers. The insurance policies in question must be construed to comport with the reasonable expectations of the insureds. *Gibson v. Callaghan*, 158 N.J. 662, 669 (1999).

The contracts in question have been read by the Plaintiffs to reasonably include coverage for payment of its facility fees. Brunswick Surgical received payments under those contracts for nine (9) years prior to the current difficulties and Jersey Ambulatory received some sporadic payments thereafter. Certainly, the Defendants had at one time interpreted the contracts to include such coverage in order for payment to have been

5

issued. Plaintiffs now respectfully ask that the Court read those contracts in the same manner in which they had once been interpreted by both sides and restore the coverage that exists there under.

Respectfully submitted,

*/s/ Gregory J. Lawrence*
Gregory J. Lawrence

Dated: May 5, 2010