# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

BRUNSWICK SURGICAL CENTER, LLC
and JERSEY AMBULATORY CENTER, LLC,

        Plaintiffs,

      vs.

CIGNA HEALTHCARE and CONNECTICUT
GENERAL LIFE INSURANCE COMPANY,

      Defendants.

Civil Action No.: 09-cv-05857 (AET)(LHG)

*Document electronically filed*

---

**SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS
CIGNA HEALTHCARE OF NEW JERSEY, INC., IMPROPERLY PLEADED AS
"CIGNA HEALTHCARE," AND CONNECTICUT GENERAL LIFE
INSURANCE COMPANY'S CROSS-MOTION FOR SUMMARY JUDGMENT**

---

E. Evans Wohlforth, Jr., Esq.
Jennifer Marino Thibodaux, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500
*Attorneys for Defendants CIGNA Healthcare
of New Jersey, Inc., improperly pleaded as
"CIGNA Healthcare," and Connecticut
General Life Insurance Company*

#1543192 v1
106782-64628

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................iii

I.     PROCEDURAL HISTORY........................................................................ 1

II.    SUMMARY OF THE ARGUMENT ....................................................... 3

III.   THE PLANS CANNOT BE REASONABLY READ TO COVER AN UNLICENSED, SINGLE-ROOM SURGICAL FACILITY .................... 5

IV.   RESPONSE TO ISSUES RAISED IN THE COURT'S JUNE 18, 2010 LETTER TO COUNSEL, D.E. # 27 ..................................................... 8

     A.    Whether Certain of the Plans are Governed by ERISA or Not Has No Significance for This Motion ............................................... 11

     B.    The Court Need Not Review Any Claim Administrator's Decision To Adjudicate the Cross-Motions for Summary Judgment....................................... 12

     C.    The CIGNA Defendants Seek Summary Judgment As to Claims Governed By the Twelve Plans that Contain Language Consistent With the East Windsor Plan the Parties Relied Upon By Way of Example ............................... 15

     D.    The CIGNA Defendants' Prior Payments to Plaintiffs Are Not Material ........... 16

     E.    Only One of the Plans Is Different From the Others, and is Not Relevant For the Purposes of the Motions for Summary Judgment ................................... 20

V.    CONCLUSION.................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

American Cyanamid Co. v. Fermenta Animal Health Co.,
  54 F.3d 177 (3d. Cir. 1994).......................................................................................... 17

Bukuvalas v. Cigna Corp.,
  Civ. No. 10-710 (D.N.J.)............................................................................................. 14

Continental Cas. Ins. Co. v. Darella Electric, Inc.,
  2010 U.S. Dist. LEXIS 11437 (D.N.J. Feb. 9, 2010) .......................................... 8, 12

Firestone Tire & Rubber Co. v. Bruch,
  489 U.S. 101 (1989)................................................................................................... 13

John Wyeth & Brother Ltd. v. Cigna Int'l Corp.,
  119 F.3d  1070 (3d Cir. 1997)..................................................................................... 17

Lockhart v. Holiday Homes of St. John, Inc.,
  678 F.2d 1176 (3d Cir. 1982)...................................................................................... 17

Mellon Bank, N.A. v. Aetna Business Credit, Inc.,
  619 F.2d 1001 (3d Cir. 1980).................................................................................. 17, 18

Pacifico v. Pacifico,
  190 N.J. 258 (2007) ................................................................................................... 14

Penske Logistics, Inc. v. KLLM, Inc.,
  285 F. Supp. 2d 468 (D.N.J. 2003) .............................................................................. 8

Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co.,
  124 F.3d 508 (3d Cir. 1997)........................................................................................ 17

Stewart v. Kelchner,
  2009 U.S. App. LEXIS 28334 (3d Cir. Dec. 23, 2009).................................... 10, 17

United States v. Yusuf,
  199 Fed. App'x 127 (3d Cir. 2006)............................................................................ 18

Williams v. Metzler,
  132 F.3d 937 (3d Cir. 1997)........................................................................................ 17

## STATUTES

28 U.S.C. § 1367(a) ........................................................................................................ 11

#1543192 v1
106782-64628

## <u>OTHER AUTHORITIES</u>

Holmes, <u>The Path of the Law</u>,
   10 Harv. L. Rev. 457, 463  (1897) .......................................................................... 17

<u>Williston on Contracts</u>,
   § 32:11 ...................................................................................................................... 8

## <u>RULES</u>

Def. Supp. L. Civ. R. 56.1 ............................................................................................ 9

Def. Supp. L. Civ. R. 56.1, ¶ 2 ..................................................................................... 9

Def. Supp. L. Civ. R. 56.1, ¶ 4 ..................................................................................... 9

#1543192 v1
106782-64628

Defendants CIGNA Healthcare of New Jersey, Inc., improperly pleaded as "CIGNA HealthCare,"[1] and Connecticut General Life Insurance Company ("CGLIC" and collectively, "CIGNA Defendants") respectfully submit this supplemental brief pursuant to the Court's June 18, 2010 letter to counsel.  See Docket Entry ("D.E.") # 27.  For the reasons (i) set forth in the CIGNA Defendants' memorandum of law in opposition to Plaintiffs Brunswick Surgical Center, LLC and Jersey Ambulatory Center, LLC's ("Plaintiffs") motion for summary judgment and in support of the CIGNA Defendants' cross-motion for summary judgment, D.E. # 23-1, (ii) stated by defense counsel during the June 16, 2010 oral argument, and (iii) for the reasons set forth herein, the CIGNA Defendants respectfully request that their cross-motion for summary judgment be granted and that Plaintiffs' claims be dismissed.  Specifically, the CIGNA Defendants request that summary judgment be granted as to all claims that relate to the twelve (12) Summary Plan Descriptions ("SPDs," "benefit plans," or "Plans") that contain coverage language substantially identical to that of the sample Plan upon which the parties have relied.

I.    **PROCEDURAL HISTORY**

This matter concerns the claims for a facility fee by a predecessor and successor medical provider as assignee of its patients employee health benefits under various employee benefit plans.  At the February 3, 2010 initial conference held before the Honorable Lois H. Goodman, U.S.M.J., it was proposed that resolution of a narrow issue of contract interpretation by a motion for summary judgment would materially advance, if not completely adjudicate, this litigation.  See D.E. # 17 (February 4, 2010 letter from Judge Goodman setting briefing schedule).  This

---

[1] "CIGNA Healthcare" does not exist as a juridical entity.  The CIGNA Defendants presume that Plaintiffs intended to name CIGNA Healthcare of New Jersey, Inc.  Despite this correction, the CIGNA Defendants preserve and do not waive any arguments, rights and defenses regarding CIGNA Healthcare of New Jersey, Inc. including without limitation whether this entity is a proper defendant in this action, all of which are expressly reserved.  Moreover, "CIGNA Corporation" is not named as a defendant in the Second Amended Complaint.

1

proposal was based upon Plaintiffs' counsel's representation that they were claiming benefits under a grant of coverage to Free-Standing Surgical Facilities.  See also Certification of E. Evans Wohlforth, Jr., Esq. ("Wohlforth Cert."), annexed to the CIGNA Defendants' opposition to Plaintiffs' motion for summary judgment and cross-motion for summary judgment ("Defs. Br."), Exh. D at ¶¶ 2(a) and 5, D.E. # 23-4.  Plaintiffs' counsel further represented that all of the employee benefit plans at issue contained the same language relating to Free-Standing Surgical Facilities.

In their moving brief, Plaintiffs conceded that they were not a Free-Standing Surgical Facility under the terms of the relevant plan.  See Plaintiffs' Motion for Summary Judgment ("Pl. Br.") at 4, D.E. # 20-2.  Instead, Plaintiffs claimed coverage under a different grant of coverage, that for an Other Health Care Facility.  Id. at 3.  Plaintiffs submitted a sample SPD for the East Windsor Regional School District ("East Windsor Plan"), and stated as an undisputed fact that this SPD "is representative of the contract language at issue in the within dispute concerning the coverage available under the various health insurance policies."  Pl. Br. at 1, D.E. # 20-1.  See Supplemental Certification of E. Evans Wohlforth, Jr., Esq. ("Supp. Wohlforth Cert"), Exhs. A-M (copies of the thirteen (13) SPDs applicable to the patients-assignees at issue).

Initially, the CIGNA Defendants did not object to Plaintiffs' assertion that the East Windsor Plan contained language that was the same in relevant part to all other SPDs at issue. Upon preparing for oral argument on the cross-motions for summary judgment, however, the CIGNA Defendants' counsel realized that there is one Plan that contains language different from the others.  See Supp. Wohlforth Cert., Exh. F ("Separation Medical Plan").  As will be further explained infra, the Separation Medical Plan is not at issue for the pending motions.  Id.  All of the remaining Plans contain the identical disputed language and present the same central

2

question of contract interpretation.  Other differences between the Plans, such as whether they are self-funded, subject to ERISA and/or grant discretion to the CIGNA Defendants to interpret their terms, were discussed at oral argument.  For the reasons discussed below, however, issues raised by these differences need not be reached on this motion.

On June 29, 2010, the CIGNA Defendants' counsel telephoned Plaintiffs' counsel pursuant to the Court's direction in its June 18, 2010 letter to meet and confer regarding the continued viability of the cross-motions for summary judgment.  See D.E. # 27.  During that telephone call, the CIGNA Defendants' counsel said that they would be sending copies of each of the plan documents to Plaintiffs' counsel that same day; indeed, the documents were sent via overnight mail.  See Supp. Wohlforth Cert., Exh. N (a copy of the June 29, 2010 cover letter to Plaintiffs' counsel enclosing a CD containing the Plans); Exh. O (a copy of the face of the CD containing the Plans); and Exh. P (a copy of the Federal Express confirmation of delivery).  Plaintiffs' counsel did not wait to receive and review the SPDs, but filed its supplemental brief on the same day as the telephonic conference, which was ten (10) days before the deadline set by the Court.  See Plaintiffs' Supplemental Brief ("Pl. Supp. Br."), D.E. # 29.  A supplemental production of plan documents occurred on July 8, 2010.  See Supp. Wohlforth Cert., Exhs. S-U.

## II.  SUMMARY OF THE ARGUMENT

While the change in Plaintiffs' legal theory has complicated this matter, this complication is only superficial.  The issue posed in this motion is purely one of contract construction.  We provide the following roadmap of the issues for the Court's convenience.

There is really only one issue that the Court need decide:

1.   The Plan documents as whole cannot be reasonably read to include Plaintiffs within the definition of an Other Health Care Facility.  Therefore, the Plans are unambiguous that there is no coverage under this theory and summary judgment must be granted to the CIGNA Defendants.

#1543192 v1
106782-64628

Because this proposition is correct, a number of subsidiary issues Plaintiffs raise need not be reached.  But, as noted, even if these additional issues were considered, they would still favor the CIGNA Defendants:

2.      Plaintiffs' argument based upon past claim payments need not be considered because the Plan language is unambiguous.

    (a)      If this argument were considered, Plaintiffs, the burdened non-movants, can adduce no evidence that the past payments show that the CIGNA Defendants' understood the disputed language to mean that Plaintiffs were entitled to coverage.

    (b)      Plaintiffs' portion of the joint discovery plan, as well as its counsel's comments during the Rule 16 conference, demonstrate that Plaintiffs believed they were entitled to coverage as a Free-Standing Surgical Facility; Plaintiffs never relied upon the Other Health Care Facility clause before they filed their motion for summary judgment.[2]

    (c)      The evidence Plaintiffs submitted, as well as the unrebutted Certification of Mary Ellen Cisar, both show that the prior payments were made in error under the Free-Standing Surgical Facility clause.[3]  Thus, the prior payments do not constitute evidence of the CIGNA Defendants' contractual intent to provide coverage under the Other Health Care Facility clause.

3.      The issue of the discretionary clause need not be reached because the unambiguous Plan language does not provide coverage to Plaintiffs.  Therefore, the CIGNA Defendants' cross-motion for summary judgment must be granted as to all of the Plans.

    (a)      If the Court finds that the Plan language is open to multiple, reasonable interpretations at least one of which favors Plaintiffs, then the Plans are ambiguous in a material respect and the summary judgment motions should be denied.

    (b)      If summary judgment is not appropriate because the Plans are ambiguous, then the issue of the CIGNA Defendants' discretion will be reached.  All of the Plans, except the four (4) non-ERISA Plans, confer discretion on the claims administrator.[4]  The Court will be required to defer to the CIGNA Defendants' reasonable interpretation of the Plans as to the majority of the Plans that grant discretion to the claims administrator.

    (c)      For the purposes of these cross-motions, Plaintiffs' emphasis on the issue of whether the Court's review of the factual record is limited by the existence of

---

[2] See Wohlforth Cert., Exh. D at ¶¶ 2(a) and 5.
[3] See Pl. Supp. Br. at Exhibit A, D.E. # 29-1 (letter from Carole Forte, RN) and Certification of Mary Ellen Cisar ("Cisar Cert.").
[4] See Supp. Wohlforth Cert., Exh. S.

#1543192 v1
106782-64628

discretionary clauses in the Plans is irrelevant.  The sole issue for the Court is whether the Plans provide coverage to Plaintiffs, which depends solely upon the Plan language.

**III.   THE PLANS CANNOT BE REASONABLY READ TO COVER AN UNLICENSED, SINGLE-ROOM SURGICAL FACILITY**

The dispositive point in this case is that the SPDs cannot be reasonably read to provide coverage for this unlicensed, single-room surgical facility.  Because Plaintiffs argue that the Plans do provide such coverage, the parties agreed that summary judgment was appropriate based upon this narrow issue of contract interpretation.  The situation has been muddied by Plaintiffs' subsequent change of position regarding under which portion of the Plans it claims coverage.  Moreover, preparation for oral argument revealed that one of the Plans is different from the others at issue.  See Supp. Wohlforth Cert., Exh. F.

Yet the central tenet remains unchanged.  If Plaintiffs' argument is followed to its logical conclusion -- that is, a facility fee for this unlicensed, single-room surgical facility that fails to qualify for coverage as a "Free-Standing Surgical Facility" can nonetheless gain coverage as an "Other Health Care Facility" -- the carefully crafted structure of the Plans would be rendered nonsensical.  Such an interpretation flies in the face of the Plan language and creates an open-ended, limitless coverage of facility fees that cannot be reconciled with common sense.  The Court can and should hold that the Plan language is sufficiently clear and that it precludes any ambiguity that this type of facility is not covered.  On this basis, summary judgment should be granted to the CIGNA Defendants.

The arguments and authorities in support of the CIGNA Defendants' position on the Plan language have been thoroughly briefed already.  See Defs. Br. at Points I-III, D.E. # 23-1.  They are reiterated here for clarity and to emphasize that the other issues Plaintiffs raise are, in actuality, non-material to the central issue presented: whether the Plans provide coverage for a facility fee by an unlicensed, single-room, outpatient, surgical facility.  It is undisputed that

#1543192 v1
106782-64628

Plaintiffs' facility is an unlicensed, single-room, out-patient, surgical facility. <u>See</u> Pl. Statement of Material Facts at ¶ 3, D.E. # 20-1. The facility fee at issue is a separate fee for the use of the facility itself. Dr. Levin owns and operates the facility as an extension of his medical practice and coverage for his professional fee is not disputed here. The SPDs carefully articulate what types of facility fees are covered. A covered surgical facility must have more than one operating room and it must be licensed, among other specified attributes. <u>See</u>, <u>e.g.</u>, Supp. Wohlforth Cert., Exh. B at CIGNA 000127. Even Plaintiffs concede that they do not satisfy these requirements for coverage, and they have retreated from their original position that they were entitled to coverage as a Free-Standing Surgical Facility. <u>See</u> Wohlforth Cert., Exh. D at ¶¶ 2(a) and 5.

But, having lost the battle, Plaintiffs are unwilling to quit the field. In their motion, Plaintiffs attempt to shoehorn themselves into the definition of an "Other Health Care Facility," which is a covered facility under the Plans.[5] <u>See</u>, <u>e.g.</u>, Supp. Wohlforth Cert., Exh. B at CIGNA 000129. This cannot be reconciled with the Plan language for a number of reasons. First, Plaintiffs are an outpatient surgical facility and the scope of coverage for outpatient surgical facilities is clearly set forth in the Plans. Plaintiffs cannot ignore their status as an outpatient surgical facility simply because they fail to qualify for coverage under the relevant section. Second, a plain reading of "Other" in "Other Health Care Facility" refers to coverage for facilities not already addressed elsewhere. Unfortunately for Plaintiffs, outpatient surgical facilities are explicitly and thoroughly treated in another section of the Plan and that section does not include their type of facility. In summary, the Plans were carefully drafted and Plaintiffs do

---

[5]      Plaintiffs advanced the argument that they are an "Other Health Care Facility" for the first time in their summary judgment motion. <u>See</u> Pl. Br. at 6, D.E. # 20-2. Although not relevant for the purposes of this section of the argument, no claim was ever made or paid by the CIGNA Defendants to Plaintiffs as an "Other Health Care Facility." <u>See</u> Certification of Mary Ellen Cisar; <u>but</u> <u>see</u> <u>infra</u> at Point IV(D) (explaining that the lack of prior payment as an Other Health Care Facility is fatal to Plaintiffs' "prior course of dealing" theory).

#1543192 v1
106782-64628

not fall within the definition of a Free-Standing Surgical Facility. They cannot frustrate the clear purpose of this section by roaming other sections of the Plans and proposing open-ended interpretations of them in an effort to find coverage.

The CIGNA Defendants need not specify what types of facilities might be covered under "Other Health Care Facilities." The CIGNA Defendants contend that the "Other Health Care Facilities" definition does not include Plaintiffs and that no reasonable construction of that definition read together with the other provisions of the Plans can be made to include Plaintiffs. For example, the illustrative examples of an "Other Health Care Facility" are facilities far removed in kind from Plaintiffs' one-room extension of a doctor's medical practice. See, e.g., Supp. Wohlforth Cert., Ex. B at CIGNA 000129 ("licensed skilled nursing facilities, rehabilitation Hospitals and subacute facilities"). Plaintiffs have argued that they are a subacute facility, a claim that has no support other than the assertion of counsel. In fact, the examples provided and other features of the Plans demonstrate that "Other Health Care Facility" is intended to cover inpatient facility fees. Indeed, the limitation on coverage under this clause in the Schedule of Benefits is expressed in a number of inpatient days. See Supp. Wohlforth Cert., Ex. B at CIGNA 00085. See also Def. Br. at Points I-III, D.E. #23-1 (noting other inconsistencies between various provisions of the Plans and Plaintiffs' proposed interpretation of "Other Health Care Facility" as applying to their oupatient surgical facility).

Indeed, as a matter of plain language, "Health Care" cannot relate to outpatient surgery unless "Health Care" is generically interpreted to include any and all medical procedures. Thus, if "Other Health Care Facility" was interpreted to include Plaintiffs, then it would include any place at which medical treatment was rendered. Under Plaintiffs' proposed reading, any such place would be entitled to a separate facility fee in addition to that of the medical professional's

#1543192 v1
106782-64628

fee and "Other Health Care Facility" would swallow the other, carefully limited grants of coverage for facility fees.  Certainly such a result would gut the careful delineation of covered surgical facility fees in the Plans, and turn that language into mere surplusage, while essentially rendering meaningless the definition of an Other Health Care Facility.  Such an interpretation would be patently unreasonable and thus contrary to ERISA common-law, the law of New Jersey, or any other body of authority that Plaintiff can conjure.  See, e.g., Penske Logistics, Inc. v. KLLM, Inc., 285 F. Supp. 2d 468, 474 (D.N.J. 2003) ("Under the principles of contract interpretation, a contract should not be given an interpretation which renders a term or terms superfluous or meaningless.") (citing Williston on Contracts, § 32:11).

The CIGNA Defendants' moving brief contains additional arguments that support the only plausible reading of the Plan documents.  See Def. Br. at Points I-III, D.E. #23-1.  Because no reasonable reading of the SPDs would include coverage of a facility fee for Plaintiffs -- in addition to Dr. Levin's professional fee -- the language is unambiguous in its material terms and summary judgment should be granted to the CIGNA Defendants as a matter of law.  Plaintiffs attempt to use several doctrines to bend the language of the Plans in their favor, but these doctrines are only relevant if the language is ambiguous.  See Pl. Br. at Point II, D.E. # 20-3.  As a matter of law, ambiguity exists only if the language could be reasonably interpreted to cover Plaintiffs.  Continental Cas. Ins. Co. v. Darella Electric, Inc., 2010 U.S. Dist. LEXIS 11437, *13 (D.N.J. Feb. 9, 2010).  For all of the reasons discussed herein and previously on this motion, there is no such reasonable interpretation.

## IV.   RESPONSE TO ISSUES RAISED IN THE COURT'S JUNE 18, 2010 LETTER TO COUNSEL, D.E. # 27

This Point contains the CIGNA Defendants' responses to the various issues raised in the Court's June 18, 2010 letter to counsel.  See D.E. # 27.  As a preamble, the CIGNA Defendants

#1543192 v1
106782-64628

advise the Court that there are thirteen (13) Plans at issue in this case.  Of these, twelve (12) contain the same "Free-Standing Surgical Facility" and "Other Health Care Facility" definitions and grants of coverage as appear in the East Windsor Plan, which was initially submitted as an exemplar.  The remaining Plan, Separation Medical, is an "outlier" and not the subject of the CIGNA Defendants' cross-motion.

Nine (9) of the thirteen (13) Plans (including the "outlier" plan) are covered by ERISA.  See Supp. Wohlforth Cert., Exh. S.   The remaining four (4) are employee benefit plans sponsored by governmental entities and, thus, exempt from ERISA.  Id.  Each of the nine (9) ERISA Plans confer discretion on the CIGNA Defendants or the Plan sponsor to interpret and apply their terms.  Id.; see also CIGNA Defendants' Supplemental Local Civil Rule 56.1 Statement Of Undisputed Facts ("Def. Supp. L. Civ. R. 56.1"), ¶ 3.  There is no discretion conferred under the non-ERISA plans.  See Supp. Wohlforth Cert., Exh. S; see also Def. Supp. L. Civ. R. 56.1, ¶ 4.  Eight (8) of the Plans are self-funded.  See Supp. Wohlforth Cert., Exh. S; see also Def. Supp. L. Civ. R. 56.1, ¶ 2.  As stated previously, a chart tabulating these features of the thirteen (13) Plans is submitted herewith for the Court's convenience.  See Supp. Wohlforth Cert., Exh. S.

These several differences in the Plans need not be considered on this motion, however, because the language of each of the Plans at issue unambiguously does not provide coverage to this type of ambulatory surgical facility fee.  Consequently, under whatever body of law or standard of review might apply -- ERISA/non-ERISA, abuse of discretion/de novo, insured/self-insured -- there can be only one answer.  For example, it does not matter whether the CIGNA Defendants enjoyed discretion under the ERISA Plans but not under the non-ERISA Plans.  Nor is it important on this motion whether abuse of discretion or some other standard is the proper

standard of review.  Because the Plan language is unambiguous, no discretion or choice between conflicting interpretations was or properly could have been exercised by the CIGNA Defendants. If the Court were to disagree and find that the Plan language was ambiguous, i.e., that there were at least two reasonable interpretations that exist, one of which favors Plaintiffs, then the issue of whether the CIGNA Defendants properly exercised discretion in rejecting that interpretation would be material.  But no such question is presented on this motion because the language will not reasonably support Plaintiffs' interpretation.

Plaintiffs have argued that a New Jersey state insurance regulation invalidates the grant of discretion of to a claims administrator.  See Pl. Supp. Br. at 2, D.E. # 29.  This argument is flawed in a number of respects, not least that the insurance regulation obviously has no bearing on the self-insured Plans.  But, again, the question need never be reached.  The language of the Plans is unambiguous, there is no reasonable interpretation that would provide coverage of these Plaintiffs' facility fee, and thus the question of the proper exercise of discretion need not be considered.

Finally, Plaintiffs' argument based on the past payment of claims likewise need not be reached.  Plaintiffs have made no showing at all that these past payments cast light on the CIGNA Defendants' intent regarding the "Other Health Care Facility" grant of coverage. Stewart v. Kelchner, 2009 U.S. App. LEXIS 28334, *8 (3d Cir. Dec. 23, 2009) (on summary judgment, burdened, non-movant must adduce evidence sufficient to create at least a question of fact on each element of its case).  There is no need to consult extrinsic evidence of past practices in the face of the plain language and the Plans' intent to not afford coverage for a separate facility fee for this single-room, unlicensed extension of a doctor's medical practice.  But, in fact the past payments are logically irrelevant to Plaintiffs' newly-found argument under the Other

#1543192 v1
106782-64628

Health Care Facility coverage, because, whatever may have impelled the past erroneous payments, Plaintiffs never claimed, and the CIGNA Defendants never paid, any claim from Defendants under the Other Health Care Facility coverage.  See infra Point IV(D); see also Cisar Cert. ¶ 6.  Indeed, prior to this motion, even Plaintiffs had never considered that coverage was afforded to them as an Other Health Care Facility.  As with the issues of ERISA coverage and the CIGNA Defendants' discretion, however, the issue of past payment need never be reached because the language of the Plans sufficiently answers the coverage question as a matter of law.

> **A.**  **Whether Certain of the Plans are Governed by ERISA or Not Has No Significance for This Motion**

For the purposes of this motion, the fact that some of the polices are governed by ERISA, while others are not is of no real import.  There is no doubt that this Court has federal question jurisdiction over the claims involving ERISA-governed policies and supplemental jurisdiction over the non-ERISA policies.  See 28 U.S.C. § 1367(a) (federal court with jurisdiction over a portion of the claims in a case may also exert its jurisdiction over "all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."); see also Supp. Wohlforth Cert., Exh. S.  Plaintiffs have brought their claims in a block; they fail to delineate which is which in the Second Amended Complaint.  See D.E. # 13.  The substantive allegations of liability can only be read as common to all of them.  Evaluating Plaintiffs' arguments as to each of the twelve (12) similar Plans depends on the same "Free-Standing Surgical Facility" and "Other Health Care Facility" language.  See Supp. Wohlforth Cert., Exh. S.

If the Court were to deny summary judgment to the CIGNA Defendants on the ground that the Plan language was ambiguous, then the issue of ERISA coverage would become relevant.  In that instance, by definition there would be a reasonable choice among competing

interpretations of the Plan language.  Continental Cas. Ins. Co. v. Darella Electric, Inc., 2010 U.S. Dist. LEXIS 11437, *13 (D.N.J. Feb. 9, 2010) ("ambiguity exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations").  For those Plans in which the CIGNA Defendants have discretion, the Court would be required to defer to a reasonable choice by the CIGNA Defendants among the competing reasonable interpretations.  Whether the CIGNA Defendants had discretion would depend, in turn, on whether the Plans at issue were governed by ERISA and the grant of discretion in the Plans' language.

But the fact remains that the CIGNA Defendants had no need to choose between different interpretations in this case.  As argued above and previously on this motion, there was no reasonable interpretation of the Plan language that would have included Plaintiffs' facility fee and thus the entire question of ERISA coverage and its companion, the issue of discretion, need not be reached here.  Neither ERISA, New Jersey state contract law, nor any other source of authority would find that Plaintiffs' facility fee was covered under these Plans.

## B.    The Court Need Not Review Any Claim Administrator's Decision To Adjudicate the Cross-Motions for Summary Judgment

The Court wrote in its June 18, 2010 letter:  "The parties are invited to brief the question of what standard the Court should use in reviewing the determinations of any claims administrator."  D.E. # 27.  This issue has been partially addressed in the preceding section.  As noted, the CIGNA Defendants believe that this motion can be resolved by reference to the language common to each of the twelve (12) Plans at issue.  For the reasons stated, that language is unambiguous with respect to Plaintiffs' claim.  There is no dispute as to the relevant facts:  Plaintiffs' facility is a one-room, unlicensed surgical facility operating as an extension of a doctor's medical practice.  Consequently, there is no need to delve into issues of standards of review or to review each individual claim determination.  A plain reading of the Plans confirm

#1543192 v1
106782-64628

that Plaintiffs are neither Free-Standing Surgical Facilities nor Other Health Care Facilities entitled to coverage.

As the Court is aware, the interpretation and application of ERISA Plan terms is usually a matter of discretion for the plan or claims administrator.  This is the teaching of the familiar Firestone line of cases.  See, e.g., Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Where an ERISA administrator enjoys discretion under the Plan terms, that administrator's decision will be overturned only where there is an abuse of discretion or the decision was arbitrary and capricious.  Each of the ERISA Plans involved in this case confer discretion upon the CGLIC as claims administrator.

But, unless this motion is denied, the entire issue is academic.  A misapplication of unambiguous plan language would, by definition, constitute an abuse of discretion.  But there was no misapplication here.  Indeed, there was no reasonable reading of the Plans that would have led CGLIC to approve the claim.  In the absence of a reasonable, alternative reading that would favor Plaintiffs, CGLIC had no choice but to deny the claim, no discretion was exercised, and the application of the Plans' language to these claims must be upheld under any standard.

If the Court were to find that the language is ambiguous, a different situation would result.  In that event, the Court would have to find more than one reasonable interpretation of the Plans exist and that at least one of these would lead to coverage for Plaintiffs' facility fee.  If the interpretation of the Plans by the claims administrator is among those alternatives the Court has found was reasonable, then that interpretation would not be an abuse of discretion and the claim determination would be upheld under the abuse of discretion standard.

The claims under the non-ERISA Plans would be reviewed as typical, state-law insurance claims.  Here again, however, the Court need not enter the thicket of state law doctrines, such as

contra proferentum, advanced by Plaintiffs.  See Pl. Br. at Point II, D.E. # 20-3.  This doctrine

has no bearing where a contract is sufficiently clear.  Pacifico v. Pacifico, 190 N.J. 258, 267-8

(2007) (contra proferentum a docine of "last resort" when the court is "unable to determine the

meaning of the [contractual] term").  Indeed, even if the Court were to find that the Plans are

ambiguous, the CIGNA Defendants have and would continue to argue that this doctrine cannot

be applied on these facts and in favor of these Plaintiffs.  See Def. Br. at Point II, D.E. #23-1.

But this issue, like the many others raised by Plaintiffs, need not be resolved to rule on the

proposition on which this motion is premised -- that the Plans' language is unambiguous in not

providing coverage for Plaintiffs.

   Plaintiffs have at various points raised a New Jersey state insurance regulation, the so-

called "Sole Discretion Regulation," to argue that any grant of discretion to the claims

administrator is void.  Plaintiffs raise the Sole Discretion Regulation in hopes that by removing

the issue of discretion they can change the standard of review from abuse of discretion to de

novo, and the erroneous belief that this would permit the Court to look outside the administrative

record of these claims.  There are numerous flaws in Plaintiffs' position on the merits.  To name

but a few, the grants of discretion in the Plans do not purport to confer "sole" discretion, as

proscribed by the regulation.  See Evans v. Employee Benefit Plan, 2009 U.S. App. LEXIS 3426

(Feb. 20, 2009).[6]  The Sole Discretion Regulation has no bearing at all as to the seven self-

funded plans nor as to the four non-ERISA plans, which do not grant discretion to a claims

administrator.  One of the non-ERISA plans is also self-funded.  Thus, eleven of the twelve Plans

---

[6]  The application of the Sole Discretion Regulation has been thoroughly briefed in a
motion to dismiss pending before Judge Cavanaugh in the matter Bukuvalas v. Cigna Corp., Civ.
No. 10-710 (D.N.J.).

#1543192 v1
106782-64628

at issue here are either non-ERISA or self-funded and the Sole Discretion Regulation has no

bearing as to them.

But, as noted several times, the issue of discretion or the lack thereof, may be left for

another day.  If the CIGNA Defendants' motion is granted, it need never be reached.

    **C.**    **The CIGNA Defendants Seek Summary Judgment As to Claims Governed By the Twelve Plans that Contain Language Consistent With the East Windsor Plan the Parties Relied Upon By Way of Example**

The Court has requested that the parties set forth what relief they seek and whether that

relief is different as to the ERISA and non-ERISA Plans.  A revised proposed Order

accompanies this submission.  The CIGNA Defendants seek a ruling that Plaintiffs' claims are

dismissed as to the twelve (12) Plans (set forth in the proposed Order) that contain language

consistent with the East Windsor Plan on the ground that these Plans unambiguously do not

provide coverage for Plaintiffs' facility fee.  Plaintiffs argue that they are an "Other Health Care

Facility" entitled to coverage under the Plans, and therefore, that they are entitled to

reimbursement for their facility fees.  The CIGNA Defendants maintain that the Plan language,

particularly when the Free-Standing Surgical Facility and Other Health Care Facility grants of

coverage are read together, is unambiguous.  Plaintiffs do not qualify for coverage under either

and, consequently, they are not entitled to reimbursement for their facility fees.  Both the

ERISA-governed and non-ERISA policies contain similar language with respect to Other Health

Care Facilities and Free-Standing Surgical Facilities, and, therefore the requested relief is the

same for both types of policies.  See Supp. Wohlforth Cert., Exh. S.

No ruling is sought as to the "outlier" plan -- the Separation Medical Plan.  See Supp.

Wohlforth Cert., Exh. F.  The parties have relied upon the East Windsor Plan as an example of

the policy language applicable to all claims at issue.  See Pl. Statement of Material Facts at ¶ 2,

D.E. # 20-1; see Wohlforth Cert. at Ex. A.  The balance of the Plans are submitted with this

#1543192 v1
106782-64628

submission.  See Supp. Wohlforth Cert., Exhs. A-M.  While preparing for the oral argument on
June 16, 2010, counsel for the CIGNA Defendants discovered that one of the SPDs at issue
contained language different from the other policies.  See Supp. Wohlforth Cert., Ex. F.  Counsel
notified Plaintiffs' counsel of this discovery prior to oral argument, and also informed the Court
during the argument.  The claims associated with this Plan are not the subject of this motion.
Notably, Plaintiffs have advanced no theory at all as to why the CIGNA Defendants improperly
denied reimbursement under this Plan.

Plaintiffs' motion for summary judgment should be denied as not supportable on the
plain language of the Plans at issue.   In any event, the various issues raised by Plaintiffs, such as
reference to prior claim payments to resolve contractual ambiguity, rely on disputed factual
questions.  Although these issues need never be reached if summary judgment is granted to the
CIGNA Defendants, clearly Plaintiffs' own motion dooms its request for summary judgment.

Therefore, the CIGNA Defendants seek summary judgment as to all claims that relate to
the twelve (12) SPDs that have policy language consistent with the East Windsor Plan, including
the East Windsor Plan itself.

## D.      The CIGNA Defendants' Prior Payments to Plaintiffs Are Not Material

Plaintiffs make much of the fact that they were "paid uninterruptedly under the various
contracts for nine (9) years prior to the abrupt cessation of regular payments in February of
2008." Pl. Supp. Br. at 2, D.E. # 25.  The CIGNA Defendants do not dispute that these payments
were made.  They do, however, dispute the significance of these payments and whether they
need to be considered on this motion at all.

Plaintiffs argued (for the first time in their reply brief) that the CIGNA Defendants' prior
payment of claims shows that they read the Plans to provide coverage.  Extrinsic evidence
generally may not be considered when enforcing an unambiguous contract.  The Third Circuit

#1543192 v1
106782-64628

has held repeatedly that "'the making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs, not on the parties' having meant the same thing but on their having said the same thing.'"  See, e.g., Williams v. Metzler,  132 F.3d 937, 947 (3d Cir. 1997) (quoting Holmes, The Path of the Law, 10 Harv. L. Rev. 457, 463 (1897)); Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. 1980). In short, when a contract term is unambiguous, there is "no basis"  for considering extrinsic evidence.  John Wyeth & Brother Ltd. v. Cigna Int'l Corp., 119 F.3d  1070, 1075 (3d Cir. 1997).

Plaintiffs are correct that evidence of a prior course of dealing may be referred to where necessary to resolve contractual ambiguity under the theory that prior conduct will reveal the parties' contractual intent when the writing itself is unclear.  However, when a contract term -- read in light of the contract as a whole, rather than in a vacuum -- is susceptible to more than one reasonable interpretation, resolution of the ambiguous language is a question of fact.  Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co., 124 F.3d 508, 523 (3d Cir. 1997).  When extrinsic evidence is considered, the plaintiff bears the burden of proving the contract interpretation upon which its claim depends.  See Lockhart v. Holiday Homes of St. John, Inc., 678 F.2d 1176, 1185 (3d Cir. 1982); see also Stewart, 2009 U.S. App. LEXIS 28334 at *8 (on summary judgment burdened, non-movant must adduce evidence sufficient to create at least a question of fact on each element of its case).   It is also true that extrinsic evidence may be considered in limited circumstances to show that the contractual language chosen contained ambiguity that is not apparent absent consideration of the context of the agreement.  American Cyanamid Co. v. Fermenta Animal Health Co., 54 F.3d 177, 181 (3d. Cir. 1994) ("extrinsic evidence is permitted because the law recognizes that the meaning of words can depend on context").  It is clear, however, that "a district court cannot rest its ambiguity finding on extrinsic

17

evidence alone" and the use of such evidence must be tied to specific language in the contract. United States v. Yusuf, 199 Fed. App'x 127, 132 (3d Cir. 2006) ("court must consider the extrinsic evidence in conjunction with the contract language itself."); Mellon, 619 F.2d at 1013 ("Although extrinsic evidence may be considered under proper circumstances, the parties remain bound by the appropriate objective definition of the words they use to express their intent.").

As argued on this motion, however, there is no reasonable interpretation of the Plans that would cover Plaintiffs' facility fee. Coverage for out-patient surgical facility fees is clearly spelled out in the Plans and does not include Plaintiffs' facility. Plaintiffs' resort to the Other Health Care Facility coverage is a ploy of desperation that, if accepted, would make a nullity of numerous other, carefully crafted Plan provisions. If there were ambiguity, Plaintiffs have conspicuously failed to carry their burden on this motion to adduce any evidence at all that past payments support their claim that they have coverage as an "Other Health Care Facility." Nor does an argument exist that the past payments provide some sort of context that would inform the Court's understanding of the parties choice of contract terms rather than simply contradicting the meaning of the Free-Standing Surgical Facility definition read in context with the rest of the Plan. See Mellon, 619 F.2d at 1013 (court could consider extrinsic evidence that parties meant Canadian dollars when they specified payment in dollars, but not that they meant twenty dollars when they specified ten). Plaintiffs' argument in reality is simply that the CIGNA Defendants paid in the past and must therefore keep on paying. This contention has no basis in law and cannot defeat the language of the Plan.

But, even considered on Plaintiffs' own terms, the evidence of past payments cannot inform the Court regarding the CIGNA Defendants' contractual intent under the Other Health Care Facility coverage. Plaintiffs own submissions to this Court show that they were at all times

proceeding on the mistaken basis that they were a "Free-Standing Surgical Facility."  See Wohlforth Cert., Exh. D at ¶¶ 2(a) and 5.  The evidence is that the prior payments were made, by error, under the Free-Standing Surgical Facility coverage, which even Plaintiffs no longer contend includes them.  These payments are thus irrelevant, because they were the result of error and do not show the CIGNA Defendants' intent regarding any (non-existent) ambiguity.  See Cisar Cert. at ¶ 4.  The evidence is that, in 2008, the CIGNA Defendants realized that the number of claims submitted for Free-Standing Surgical Facility fees by out-of-network providers in New Jersey had increased.  Id. at ¶ 2.  Plaintiffs' ambulatory surgical center was one of the providers the CIGNA Defendants selected at random for an audit.  Id. at ¶ 3.  The CIGNA Defendants determined that Plaintiffs' facility was an unlicensed ambulatory surgical center not entitled to coverage, that Plaintiffs were paid by mistake, and that future claims should be denied.  Id. at ¶ 4.  Specifically, Plaintiffs were erroneously reimbursed as "Free-Standing Surgical Facilities"; they were never reimbursed as "Other Health Care Facilities."  Id. at ¶¶ 5-6.

Indeed, Plaintiffs' own actions refute their "past payment" argument.  They themselves submitted claims under the code for ambulatory surgical procedures.  See CIGNA Defendants' Local Civil Rule 56.1 Statement of Material Facts In Support Of Cross-Motion For Summary Judgment at ¶ 4, D.E. # 23-3; see also Wohlforth Cert. Exhs. B and C, D.E. # 23-4.  Plaintiffs' submissions to the Court prior to this motion showed that they never considered the Other Health Care Facility coverage to include them.  Instead, Plaintiffs staked their claim on the Free-Standing Surgical Facility coverage.  The fact that Plaintiffs never submitted claims for payment as an "Other Health Care Facility" is completely fatal to its argument that the course of dealing between the parties requires the CIGNA Defendants to reimburse Plaintiffs.  The past payments say nothing about the CIGNA Defendants' understanding of the Other Health Care Facility

#1543192 v1
106782-64628

coverage because it was never raised before now.  In sum, the mistake in prior payment is of no consequence for the purposes of these motions, which center on whether the Plan language provides coverage to Plaintiffs.

### E.     Only One of the Plans Is Different From the Others, and is Not Relevant For the Purposes of the Motions for Summary Judgment

As discussed supra, Point IV(C), only one of the thirteen (13) Plans at issue is different from the others and is not relevant for the purposes of this motion.  See Supp. Wohlforth Cert., Exh. F.  Plaintiffs have not offered any theory as to why the CIGNA Defendants denied reimbursement under this Plan.  For the Court's convenience, the CIGNA Defendants have annexed a chart to this brief that analyzes the various aspects of the Plans.  See Supp. Wohlforth Cert., Exh. S.  The chart demonstrates that all of the Plans contain language consistent with the East Windsor Plan except for the Separation Medical Plan.  See id.

20

## V.   <u>CONCLUSION</u>

For the reasons set forth above, the CIGNA Defendants respectfully request that

Plaintiffs' Motion for Summary Judgment be denied and that the CIGNA Defendants' Cross-

Motion for Summary Judgment be granted.  Specifically, the CIGNA Defendants respectfully

request that summary judgment be granted as to all claims that relate to the twelve (12) Plans

that contain policy language consistent with the East Windsor Plan, including the East Windsor

Plan itself.

**GIBBONS P.C.**

By:    s/E. Evans Wohlforth, Jr.
E. Evans Wohlforth, Jr.
Jennifer Marino Thibodaux
One Gateway Center
Newark, New Jersey 07102-5310
Tel:  (973) 596-4879
Fax:  (973) 639-6486
*Attorneys for Defendants Life Insurance Company*
*of North America, improperly pleaded as "CIGNA*
*Healthcare," and Connecticut General Life*
*Insurance Company*

Dated: July 9, 2010

#1543192 v1
106782-64628