## SUPPLEMENTAL REPLY MEMORANDUM

This is a Supplemental Reply Memorandum in response to Defendants' Supplemental Memorandum of Law. My initial observation of Defendants' Supplemental Memorandum is that rather than simply responding to the specific questions asked of the Court, the Defendants have taken the opportunity to further argue their position after briefing and oral argument has taken place, addressing the issues raised in the Court's June 18, 2010 letter for the first time at the bottom of page 8 of its Supplemental Memorandum. Consequently, I feel compelled to respond to that additional unsolicited argument and ask the Court's indulgence while I briefly digress from addressing the issues that are the subject of the Court's letter.

I respectfully have to correct Counsel when he states in the **PROCEDURAL HISTORY** section of his Memorandum that it was the undersigned's proposal to pursue Summary Judgment based upon a representation that coverage was being sought under a grant of coverage to Free-Standing Surgical Facilities. (emphasis added). I was purposely vague with Counsel at the time of the Conference before the Magistrate and refused to get into an argument with him at that time over specific contract provisions granting coverage. Additionally, I did not represent at that Conference that all of the policies contained the same language since I had not been provided by the Defendants with all of the plans until last week. What I said was that Corporate Counsel for the Defendants had provided me with some of the policies and represented to me that the language was the same or similar for all of the policies with respect to the subject coverage issues in dispute. I am sure Counsel will recall this because he had me supply the name of the corporate attorney with whom I had spoken.

1

Counsel agreed to the stipulation and consequently, it was included in Plaintiffs' "Statement of Material Facts". Any suggestion to the contrary implying that Counsel was relying on my representations and therefore, did not review thoroughly all of the policies, would be misplaced.

As far as the one "outlier" policy is concerned, it was not one of the "sample" policies provided me initially and I have not had a chance to fully review and evaluate that policy plan in detail to enable me to confer with my client. Obviously, since the Court had limited each attorney's submission to twenty (20) pages, I was not expecting to receive some 900 or so documents, especially two days before I returned from a family vacation. While perhaps technically in compliance with the page limit ordered by the Court, since the argument portion was limited to the twenty (20) pages, I doubt whether the submission is anything anyone would have expected in response to the Court's June 18, 2010 letter.

I am willing, however, to accept Counsel's representations that a mistake was made in this instance and have no problem granting him the courtesy of excluding that one policy from the stipulation to which the parties agreed and from whatever decision the Court makes concerning the competing motions for summary judgment. I do however; reserve my clients' rights with respect to that policy and any further action that may be taken in that regard.

Initially, the Defendants denied payment due to "non-licensure" and nothing more. See Plaintiffs' Exh. "A" to Suppl. Memorandum/Atty Cert., Docket Entry ("P.E.") #29-1. The fact that the Defendants originally gave non-licensure as the sole reason for the non-payment and for the demand for reimbursement is important to an understanding

of the evolution of these claims. Frankly, these Plaintiffs frequently get this type of denial from insurance carriers that need to be educated as to the existence of *N.J.A.C.* 8:43A, as it is not usual that a doctor is legally entitled to receive a separate facility fee for services. Only facilities legally entitled to charge a separate fee can receive a facility fee and therefore, the rather overstated prediction by Defendants that Plaintiffs' interpretation of the contracts at issue here would somehow entitle all doctors to receive such fees is rank argument.

The explanation provided to Defendants of *N.J.A.C.* 8:43A only caused them to cite the grant of coverage for a "Free-Standing Surgical Facility" in the various policies. The Plaintiffs have always maintained that there is nothing in that grant of coverage to exclude payment to any other type of facility simply based upon the medical facility's status as being unlicensed. That statement does not mean that the Plaintiffs had sought to be included under that grant of coverage.

So, was the mistake now being offered as an explanation for past payment that Defendants thought the Plaintiffs were licensed or was it that they thought Plaintiffs were a "Free-Standing Surgical Facility"? Plaintiffs are neither, but arguendo, assuming the Plaintiffs fulfilled all of the other criteria for a "Free-Standing Surgical Facility", licensure could not be the basis for a denial since the requirement that "it is licensed in accordance with the laws of the appropriate legally authorized agency" would not require a license for a *N.J.A.C.* 8:43A facility that does not require one.

What started out as a denial initially based on non-licensure morphed into a denial based on the definition provided in the policy for a "Free-Standing Surgical Facility". It turns out that licensure really had nothing to do with the argument at all.

Respectfully, it has been the position of the Defendants and the basis for the denial of payment that has evolved rather than any change in position being put forward by the Plaintiffs.

At the top of page seven (7) in the Cigna Defendants' Memorandum, it is asserted that "Cigna" need not specify what types of facilities might be covered under "Other Health Care Facilities" and that "no reasonable construction" of the definition provided for that grant of coverage, when read with the other policy provisions, could possibly include the Plaintiffs. However, the explanation offered by Defendants when seeking to interpret or explain the definition (i.e. "construct"), simply does not associate with the definition set forth. The definition does not, under any reasonable "construct", say or otherwise imply, "Non-Hospital, in-patient facility". This has been briefed and argued previously and will not be repeated here other than to state that the Schedule of Benefits does not support Defendants' argument for the specific reasons given.

With respect to those issues raised by the Court and in reply to Defendants' Supplemental Memorandum, I agree that the Federal Court has federal question jurisdiction over the ERISA claims and supplemental jurisdiction over the non-ERISA claims. That is why all the claims were brought together in one forum. I do not however agree as to the level of review concerning Defendants' Motion should Plaintiffs not prevail.

Although the Defendants seemingly are arguing that the language in the contracts is not ambiguous (In other words, that there is no reasonable alternative reading of the policies that would favor Plaintiffs), the argument is actually one calculated to create ambiguity in order to argue a different standard of review. However, there are some legal

4

and intellectual problems with the argument that will cause it to fail.

Defendants argue that a misapplication of unambiguous plan language would, by definition, constitute an abuse of discretion but that there was no misapplication because they got it right. Furthermore, since the language was unambiguous, there was only one way to interpret it and thus, no discretion was exercised. They then argue in the alternative that if the Court finds ambiguity, it must defer to the claims administrator's interpretation if reasonable. Plaintiffs argue that where the **coverage definition** itself reasonably can be read to include coverage for its facility fees, the reasonable expectations of the "insured" will be honored and coverage will be afforded. (emphasis added). Plaintiffs further maintain that the standard of review does not change and that there is no deference given to any claims administrator's interpretation of the policy language.

Plaintiffs' position is supported legally by *N.J.A.C.* 11:4-58 which is not a "Sole Discretion Regulation" as Defendants choose to characterize it and thereby summarily dismiss its application. It is a Rule with the force of statute that retroactively voids discretionary clauses in New Jersey insurance contracts. (Rule attached together with Summary of Public Comments and Agency Responses, Joint Exhibit "A").

Legal authority explaining this rule of law in New Jersey flows from *Firestone v Bruch*, 489 *U.S.* 101 (1989), and includes, most prominently, *Radford Trust v First Unum*, 321 *F. Supp.* 2d 226 (DMass 2004); *Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefits Denials Under ERISA*, Prof. John H. Langbein, 101 *Northwestern L.R.* 1315 (2007) (Langbein); and *Metropolitan Life v Glenn*, 128 *S.Ct.* 2343 (2008).

Courts review a denial of benefits under an ERISA-governed benefits plan *de novo*, unless the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the question is whether the denial was arbitrary and capricious. *Radford Trust, supra*, at 11-13 (official pagination).

Chief Judge Young's notable opinion in *Radford Trust, supra*, including his discussion of the Standard of Review and Public Responsibility of Fiduciaries, together with Footnote 20, and Professor Langbein's law review article; provide background and benchmark concerns most helpful in assessing the importance of the Rule's **retroactive** elimination of the "discretionary clause" as of January 1, 2008. (emphasis added).

*N.J.A.C.* 11:4-58.1(a) provides that:

"The purpose of this subchapter is to prohibit use of discretionary clauses . . . ".

*N.J.A.C.* 11:4-58.4 provides, in its entirety, that:

"As of January 1, 2008, forms previously filed, approved or acknowledged by the Commissioner that contain provisions not in compliance with this subchapter **shall be deemed withdrawn** and shall not be delivered, executed or renewed."
(emphasis added)

A discretionary clause is not allowable under *N.J.A.C.* 11:4-58 if it fails to use the word "sole" in conferring administrative authority. If that were the case, *N.J.A.C.* 11:4-58 could be completely invalidated by an insurance company or self-insured plan simply by not using the word "sole". If that resulting discretionary clause could still be held to trigger an "arbitrary and capricious" review under *Firestone, supra*; the result would be a complete emasculation of the regulation. Therefore, any singular focus on the Rule's use of the word "sole", as it relates to "discretion", in order to defeat the purpose of the Rule, is not a proper or legitimate interpretation. Consequently, there is a *de novo* review required of the Court and the language purporting to confer discretion on a claims administrator, no matter what level of discretion, is void in these ERISA policies and

6

would have no application to the non-ERISA policies, first and foremost because they do not contain such clauses.

Cigna relies on the unpublished opinion in *Evans v Employee Benefit Plan*, 2009 WL 418628, (CA3 2009), to advance its argument that *N.J.A.C.* 11:4-58 is not applicable unless the discretionary clause in the policy grants "sole" discretion to the insurance administrator, i.e. uses that magic word. A fair reading of Evans is that the District Court's decision upholding MetLife's denial of benefits would have been upheld by the Third Circuit under any standard of review employed. The holding does not involve *N.J.A.C.* 11:4-58 and the Circuit Court stated that the issues raised by *N.J.A.C.* 11:4-58 "did not merit fulsome analysis". In fact, no analysis beyond a passing and inaccurate mention was provided. *N.J.A.C.* 11:4-58 does not limit a defined discretionary clause to those using that word. The use of the word "sole" is obviously and clearly intended to limit discretionary clauses to those where the insurance company makes the decision unilaterally; as opposed to a theoretical situation where another entity passes on the decision. Such reference to another, cooperatively or unilaterally, deciding entity simply does not happen in the real world. The Court in *Evans, supra*, also misses the provision in *N.J.A.C. 11:4-58.4* making it retroactive by "withdrawing" all policies with discretionary clauses as of January 1, 2008. *Evans'* discussion of the Rule was not a holding, the Rule was peripheral to the issues decided and the Rule did not "merit a fulsome analysis" as the interpretation of the Rule was not essential to the holding in the case (Unpublished *Evans* case attached as Exhibit "B").

Regardless of the existence of the above Rule, if there was a "mistake" as claimed by the Defendants in paying these facility fees in the past, that would not constitute

a "reasonable choice" among competing interpretations of the policy language. Furthermore, there would be no discretion in the decision to make payment to which the reviewing authority could defer because according to the Defendants, it was a mistake, pure and simple. There was no "weighing of alternatives". A mistake in thinking that the Plaintiffs were a "Free-Standing Surgical Facility" is not, by definition, a use of discretion.

Statistically, the thought that all of the claims administrators handling payment of these claims for nine (9) years made the same mistake is difficult to comprehend logically but that is the position the Defendants have taken in this litigation. This is especially so when we know that they were not just paying these facility fees for those nine (9) years without exercising some level of scrutiny or review, because "corrections" were made and payment denials overturned of previously submitted claims. See Plaintiffs' Exh. "B" attached to Memorandum of Law, Docket Entry ("P.E.") #25.

It is not the position of the Plaintiffs that since they were paid in the past, that the Defendants should keep paying. This exaggerated claim attributable to the Plaintiffs by Defendants' Counsel on page 18 of Defendants' Submission and Counsel's assertion that finding coverage for Plaintiffs would somehow have calamitous consequences with regard to payment of these facility fees are simply hyperbole and not legitimate argument. It is mindful that Defendants could simply change the language in the various policies to avoid the claimed consequences that coverage for these Plaintiffs would allegedly cause according to Defendants argument, but refuse to do so.

Payment was made over an extended period of time and would militate against there being a mistake. It is thus a legitimate inference that the Court should weigh against

the wholly conclusory certification of Defendants' Manager of the "Special Investigations Unit". There is no factual support for the conclusions or opinions set forth in that certification which is devoid of any explanation other than that the payments were mistakenly reviewed and processed under the "Free-Standing Surgical Facility" grant of coverage. Respectfully, it is submitted that this notion of mistake does not make sense logically and lacks integrity.

    What the Defendants mistakenly thought when they paid Plaintiffs is irrelevant. The correct coding of the bills for the medical procedures performed and all the proper forms were submitted under the appropriate CPT Code Book mandates for those services. Plaintiffs never represented themselves as anything other than what they were. Counsel's argument on page 19 of Defendants' Submission claiming that we never submitted claims as an "Other Health Care Facility" is misleading since Plaintiffs coded their bills properly and have no idea what type of code, or even if one exists, for "Other Health Care Facility". The coding is specific to the procedures performed so there likely would not be any specific billing code to match a generalized concept of an "Other Health Care Facility" as set forth in the various insurance contracts. (See Supplemental Certification of Bronia Feldman attached as Exhibit "C").

    Furthermore, contrary to what has been argued by the Defendants, it would not matter what the Plaintiffs understood in terms of why they were getting paid in order for Plaintiffs to have an expectation of coverage under these policies. That might be the case where payment has not been previously made but where coverage has been verified and payment has been forthcoming uninterruptedly for some nine (9) years, that is enough for the Court to consider the reasonable expectations of these Plaintiffs. (See

9

paragraph 7 of Exhibit "C").

The mere fact of payments being made for such a long period does have a bearing on the reasonable expectations of the recipient and where the coverage definition itself reasonably can be read to include coverage, the reasonable expectations of the "insured" will be honored and coverage will be afforded. Leading New Jersey cases have long held that the substance of the acts of parties govern their rights and liabilities and not solely the content of writings they may have executed. Since *Mayflower v Thor*, 9 *N.J.* 605 (1952); *Henningson v Bloomfield Motors*, 32 *N.J.* 358 (1960); *Lemelledo v Beneficial Management*, 146 *N.J.* 561 (1996); *Sons of Thunder v Borden*, 148 *N.J.* 396 (1997); and on to, *Perez v Rent-A-Center*, 186 *N.J.* 188 (2006) and *Muhammad v Rehoboth Beach*, 189 *N.J.* 1 (2006); the Courts of New Jersey have looked at events on the ground as superseding, in certain circumstances, writings between the Parties.

Prior payments may also be reflective of an arbitrary and capricious decision on the part of a plan or claims" administrator although Plaintiffs maintain that there is no deferential review allowed. Instead of simply changing the language in a policy to reflect the absence of coverage, if one suddenly stops payment after a prolonged period where payment has been unambiguously forthcoming and demands reimbursement, that scenario may well be considered an arbitrary and capricious act.

In conclusion, the policies permit a reasonable interpretation that would grant coverage and respectfully, that coverage should be found under all of the circumstances.

Respectfully submitted,

Gregory J. Lawrence

Dated: July 19, 2010

10