NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRUNSWICK SURGICAL CENTER, LLC and JERSEY AMBULATORY CENTER, LLC,<br><br>　　　Plaintiffs,<br><br>v.<br><br>CIGNA HEALTHCARE and CONNECTICUT GENERAL LIFE INSURANCE COMPANY,<br><br>　　　Defendants. | Civ. No. 09-5857<br><br>OPINION & ORDER |

THOMPSON, U.S.D.J.

## I. INTRODUCTION

This matter comes before the Court upon Plaintiffs' Motion for Summary Judgment [docket # 20] and Defendants' Cross-Motion for Summary Judgment [23]. The Court considered the parties' written submissions and then heard oral argument on this matter on June 16, 2010, Gregory J. Lawrence, Esq. of Pacifico & Lawrence appearing on behalf of Plaintiffs, and Eric Evans Wohlforth, Jr., Esq. of Gibbons P.C. appearing on behalf of Defendants. After hearing oral argument, the Court ordered additional supplemental briefing on certain issues, which the Court has also considered in making its determination. For the reasons given below, Plaintiffs' Motion is denied and Defendants' Motion is granted.

## II. BACKGROUND

### A. Factual and Procedural History

Dr. Alexander Levin is a physician who provides pain management and surgical services at a one-room surgical facility. He is the owner of the Plaintiffs in this case, which are the legal

1

entities that currently own and previously owned the surgical facility.  Dr. Levin uses the facility to perform medical services by referring patients from his private medical practice to the surgical facility and then performing procedures himself at the facility.  Dr. Levin performs only outpatient care at the facility, which is attached to his office and is in essence a part of his private medical practice.  Rather than submitting claims to their insurers, Dr. Levin's patients often assign their claims to Dr. Levin or to the Plaintiffs in payment.  Plaintiffs then collect the insurance payments directly from the insurers.

Whenever Dr. Levin performs a procedure at the surgical facility, he bills the patient for three different categories of charges—professional fees, anesthesia fees, and facility fees.  The professional fees and anesthesia fees are not currently in dispute.  This dispute arises out of Plaintiffs' efforts to collect the "facility fees"—which include the costs for an operating room, recovery room, holding area, pharmacy, and supplies—from two insurers, Defendants Cigna Healthcare of New Jersey and Connecticut General Life Insurance Company.  For several years, it appears, Defendants paid the facility fees charged by Plaintiffs.  However, beginning in 2008, Defendants stopped paying the facility fee on a number of claims, asserting that the fee does not fall within the purview of the insurance policies they have with a number of Dr. Levin's clients.  The specific provision of the policies at issue in this case provides coverage for charges made by an "Other Health Care Facility."  Plaintiffs contend that Dr. Levin's facility qualifies as an "Other Health Care Facility;" Defendants insist that it does not.

Many different patients have assigned their claims to Plaintiffs.  Consequentially, thirteen different insurance policies are now at issue.  Twelve of these policies, however, have substantially identical language, and the parties have brought cross summary judgment motions seeking a ruling from the Court as to whether the phrase "Other Health Care Facility," which appears in all twelve plans, applies to Dr. Levin's surgical facility.  Of these twelve policies,

eight are governed by the Employee Retirement Income Security Act ("ERISA"). The enforcement of these policies is therefore a matter of federal law, falling within this Court's original jurisdiction. 28 U.S.C. § 1331. Jurisdiction to enforce the remaining policies arises under this Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).

B. <u>Summary of the Insurance Policies at Issue</u>

The parties have agreed that one of the policies—i.e., the one issued to the East Windsor Regional School District—should be analyzed for purposes of determining the meaning of the term "Other Health Care Facility." Accordingly, when discussing that term,[1] the citations in this opinion conform to the language and pagination found in that policy [hereinafter "Policy"].[2]

The Policy is divided into fifteen separate major sections (*see* Policy Table of Contents), but for purposes of analyzing the term "Other Health Care Facilities," only two of these sections appear to be relevant—the "Preferred Provider Medical Benefits" section and the "Definitions" section. The "Preferred Provider Medical Benefits" section is in turn divided into four subsections: The Schedule, Certification Requirements, Prior Authorization/Pre-Authorized, and Covered Expenses. The "Covered Expenses" subsection goes on for almost ten pages listing many different types of expenses that will be reimbursed under the policy. (Policy 23-32.) One of the items listed is "charges . . . by an Other Health Care Facility . . . ." (Policy 23.) In full, the paragraph grants coverage for

> Charges made on its own behalf, by an Other Health Care Facility, including a Skilled Nursing Facility, a Rehabilitation Hospital or a subacute facility for medical care and treatment; except that for any day of Other Health Care Facility confinement, Covered Expenses will not include that portion of charges which are in excess of the Other Health Care Facility Daily Limit shown in The Schedule.

---

[1] The wording of the policies varies in other respects, such as in their discussions of ERISA. No identity between the policies is assumed in that regard.
[2] The Policy is available as Exhibit A to the Certification of E. Evans Wohlforth, Jr. Esq., submitted in opposition to Plaintiffs' motion and in support of Defendants' cross-motion.

(*Id.*)  "The Schedule" referenced here is a different subsection in the "Preferred Provider Medical Benefits" section.  "The Schedule" lists various categories of medical treatment and for each category lists the portion of the cost of that treatment that will be covered under the Policy.  (*See id.* 10-22.)  In other words, if a particular medical expense fits into one of the categories listed under the "Covered Expenses" subsection, then it will be reimbursed according to "The Schedule."  The categories that appear on the "Covered Expenses" list do not match up item-for-item with the categories that appear on "The Schedule."

One item that appears on the "Covered Expenses" list alongside "Other Health Care Facility" is "Free-standing Surgical Facility."  A "Free-standing Surgical Facility" is a medical facility for performing surgeries that—amongst other things—has at least two operating rooms and is individually licensed with the state.  (*Id.* at 57.)  It is therefore similar to the type of facility that Plaintiffs own, but Plaintiffs' facility does not qualify as a Free-standing Surgical Facility because it is not licensed by the state and has only one operating room.

The "Definitions" section of the policy defines many of the terms that appear in the Policy.  According to that section, "The term Other Health Care Facility means a facility other than a Hospital or hospice facility.  Examples of Other Health Care Facilities include, but are not limited to, licensed skilled nursing facilities, rehabilitation Hospitals and subacute facilities."  (*Id.* at 59.)

III. ANALYSIS

   A.  Standard of Review

      1.  Summary Judgment

Summary judgment is proper when "the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  In resolving a

motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More specifically, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. Accordingly, if the movant's motion is supported by facts, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

While a party moving for summary judgment must, of course, produce evidence supporting those elements essential to its case, it is not obliged to produce evidence specifically disproving those elements essential to its adversary's case. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323-24.

### 2. Review of the ERISA plan administrator's decision

Actions contesting the denial of ERISA plan benefits are governed by federal law. In such an action, the Court will use one of two different standards to review the plan administrator's decision. If the plan gives the administrator discretionary authority to determine eligibility or construe the terms of the plan, then the administrator's decision will be reviewed under a deferential "arbitrary and capricious" or "abuse of discretion"[3] standard, but if the plan

---

[3] In the context of ERISA, at least, these two phrases refer to the same standard and have the same meaning. *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 n.4 (3d Cir. 1993).

does not confer such discretion, then the administrator's decision will be reviewed *de novo*. *McLeod v. Hartford Life & Accident Ins. Co.*, 372 F.3d 618, 623 (3d Cir. 2004) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). The "abuse of discretion" standard is derived from principles of the law of trusts, which calls upon the Court to weigh a variety of factors on a case by case basis to determine whether any discretion has been abused. *See Metro. Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2350 (2008); *Firestone*, 489 U.S. at 115 (citing Restatement of Trusts § 187). The Third Circuit has described this test somewhat more narrowly, stating that "a court can overturn the decision of the plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Doroshow v. Hartford Life and Accident Ins. Co.*, 574 F.3d 230, 234 (3d Cir. 2009).

The Court is not presently in a position to determine which standard of review to use because neither party has briefed the issue of whether the policies at issue contain language that would confer discretion upon the ERISA plan administrators.[4] Furthermore, even if this issue had been briefed, the Court would not be in a position to perform abuse of discretion analysis because neither party has presented any evidence or argument concerning what occurred at the administrative level in this case.

Plaintiffs and Defendants each contend that that the presence or absence of discretion-conferring language in the policies is, in this case, moot. Plaintiffs contend that N.J.A.C. § 11:4-58.3[5] prohibits insurers in New Jersey from using such clauses, effectively guaranteeing that the

---

[4] Defendants have supplied the Court with copies of each of the insurance policies at issue, but they have not presented any argument identifying or analyzing the language in these policies that would purportedly confer discretion upon the ERISA plan administrator. In the absence of any briefing on this issue, the Court declines to undertake an analysis of the policies on its own.

[5] That section of the administrative code provides as follows:

> No individual or group health insurance policy or contract, individual or group life insurance policy or contract, individual or group long-term care insurance policy or contract, or annuity contract, delivered or issued for delivery in this State may contain a provision purporting to reserve sole discretion to the carrier

6

Court will use a *de novo* standard of review. Defendants, by contrast, insist that the Court need not determine the correct standard of review at all because, in their view, the plan language at issue in this case is unambiguous, and consequentially the only question before the Court is whether Defendants have applied the plans' plain language appropriately. (Defs.' Supplemental Mem. Law 13.)

If the language of an ERISA plan is unambiguous, then the Court need not reach the question of what standard of review ought to be used or review the administrative record. When an ERISA-governed policy's terms are unambiguous, the plan administrator is compelled to give effect to the plan's plain meaning, and a failure to do so is necessarily an abuse of discretion. *See Gosselink v. AT&T, Inc.*, 272 F.3d 722, 727 (5th Cir. 2001) ("[I]f an administrator interprets an ERISA plan in a manner that directly contradicts the plain meaning of the plan language, the administrator has abused his discretion even if there is neither evidence of bad faith nor of a violation of any relevant administrative regulations."); *c.f. Bill Gray Enters., Inc. Emp. Health & Welfare Plan v. Gourley*, 248 F.3d 206, 220 n.12 (3d Cir. 2001) (holding that when a plan administrator followed the plan's unambiguous language, extrinsic evidence of inconsistent conduct in treating claims would not prove abuse of discretion). As a result, if the meaning of the term "Other Health Care Facility" is unambiguous, the Court's only task is to determine whether Plaintiffs' surgical facility falls within that meaning. If it does, then Defendants violated ERISA, and if it doesn't, then Defendants did not violate ERISA, regardless of what standard of review is used and regardless of what facts might appear on the administrative record.

B. <u>Analysis of the Plan Language</u>

---

to interpret the terms of the policy or contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State. A carrier may include a provision stating that the carrier has the discretion to make an initial interpretation as to the terms of the policy or contract, but that such interpretation can be reversed by an internal utilization review organization, a court of law, arbitrator or administrative agency having jurisdiction.

1. Rules of Interpretation: ERISA

The interpretation and construction of an ERISA-governed plan is a matter of federal law, though federal courts charged with this task may look to analogous state law rules that are consistent with the policies underlying ERISA. *See Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1257 & n.8 (1993). The first step the Court must take in interpreting a plan is to determine whether or not the plan is ambiguous; if the terms are unambiguous, then they must be applied according to their plain meaning. *See Bill Gray Enters.*, 248 F.3d at 218. "In determining the actual terms of the plan, 'ERISA plans, like contracts, are to be construed as a whole.'" *Kremmerer v. ICI Americas, Inc.*, 70 F.3d 281, 288 (3d Cir. 1995) (quoting *Alexander v. Primerica Holdings, Inc.,* 967 F.2d 90, 93 (3d Cir. 1992)). If the language of the plan is amenable to two reasonable interpretations, then extrinsic evidence may be consulted to resolve the ambiguity. *Id.* If consideration of extrinsic evidence does not resolve the ambiguity, then the ambiguous term should be construed in favor of the insured. *Smith v. Hartford*, 6 F.3d 131, 139 n.9 (3d Cir. 1993); *Heasley*, 2 F.3d at 1257. In cases proceeding under the deferential abuse of discretion standard, the Court's role is not to interpret ambiguous provisions *de novo*, but rather to "analyze whether the plan administrator's interpretation of the document is reasonable." *Bill Gray Enters.*, 248 F.3d at 218.

2. Rules of Interpretation: State Law

Those plans not governed by ERISA are simply insurance contracts, the interpretation of which is governed by New Jersey law. The cardinal rule in interpreting a contract is to give effect to "the intention of the parties to the contract as revealed by the language used, taken as an entirety." *Onderdonk v. Presbyterian Homes of New Jersey*, 85 N.J. 171, 184 (1981) (quoting *Atlantic Northern Airlines, Inc. v. Schwimmer*, 12 N.J. 293, 301 (1953)). In pursuit of this objective, the Court may consider not only the language of the contract itself, but also "the

8

situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain." *Id.*

When interpreting an insurance contract, courts must resolve any ambiguities in the policy "in favor of the insured in order to give effect to the insured's reasonable expectations." *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 155 N.J. 29, 41 (1998). Whether or not a contract is ambiguous is a question of law that the court must resolve. *Nester v. O'Donnell*, 301 N.J. Super. 198, 210 (App. Div. 1997). "An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations . . . ." *Id.* (quoting *Kaufman v. Provident Life & Cas. Ins. Co.*, 828 F.Supp. 275, 283 (D.N.J. 1992)). Since ambiguities in an insurance contract are construed in favor of the insured, the Court should read coverage provisions broadly and exclusionary clauses narrowly. *Sealed Air Corp. v. Royal Indem. Co*, 404 N.J. Super. 363, 375 (App. Div. 2008). However, these rules do not come into play if the language of the policy is not ambiguous. If the language in an insurance policy is clear, it should generally be "interpreted according to its plain and ordinary meaning." *Am. Motorists Ins. Co.*, 155 N.J. at 41. Ultimately, like contract law generally, "[t]he fundamental principle of insurance law is to fulfill the objectively reasonable expectations of the parties." *Werner Indus., Inc. v. First State Ins. Co.*, 112 N.J. 30, 35 (1988).

       3. <u>Interpretation of the Policies</u>

Whether proceeding under ERISA or state law, the key determination this Court must make is whether or not the language of the insurance policies is ambiguous. In this case, the Court determines that the Policy is unambiguous in excluding facilities such as Dr. Levin's from the scope of the phrase "Other Health Care Facility."

The Court first notes that the Policy's definition of "Other Health Care Facility" is not really a definition at all and provides no aid in interpreting the term. The definition merely lists

two facilities which are specifically excluded from the term—"a Hospital or hospice facility"—and three facilities which are specifically included in the term—"licensed skilled nursing facilities, rehabilitation Hospitals and subacute facilities." Neither party contends that Dr. Levin's surgical practice falls under any of these exclusions or inclusions, so the Court will need to look to the structure and language of the policy as a whole in order to discern whether or not the disputed term can be reasonably construed to include it.

In order for Plaintiffs to succeed on their claims, they need to be able to put forward at least one reasonable interpretation of the term "Other Health Care Facility" that encompasses Dr. Levin's facility. Plaintiffs argue that the term "Other Health Care Facilities" includes any "facilities recognized by the [New Jersey] Department of Health and Human Services" and contend that Dr. Levin's facility "is recognized by N.J.A.C. 8:43A as a surgical practice." (Pltfs.' Reply Mem. 1, 3.) Insurance policies, like contracts generally, must be interpreted in a way that avoids making certain provisions redundant, and this principle applies to both policies governed by state law (*see, e.g., Cumberland Cnty. Improvement Auth. v. GSP Recycling Co., Inc.*, 358 N.J. Super. 484, 497 (App. Div. 2003)) and policies governed by ERISA (*see Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 439 (3d Cir. 1997) (rejecting a proposed interpretation that would render a plan section superfluous)). With regards to the policies at issue in this case, an interpretation of "Other Health Care Facility" that covers every type of medical facility acknowledged and categorized by New Jersey law would render several items on the "Covered Expenses" list redundant. Hospitals, hospice facilities, and free-standing surgical facilities all appear on the "Covered Expenses" list, but they are also all regulated by New Jersey law. In order to avoid making much of the "Covered Expenses" list superfluous, "Other Health Care Facilities" must be interpreted to refer to a smaller set of medical facilities than that of all

10

medical facilities recognized by state law.  However, Plaintiffs have not suggested a more limited interpretation.

Furthermore, given the fact that the Policy has a specific provision covering "Free-standing Surgical Facilities," it seems unlikely that the Policy was intended to cover *all* small care centers providing surgical services.  The concept of a "Free-standing Surgical Facility" is specifically limited to those surgical facilities that, among other requirements, are licensed and have multiple operating rooms.  If the Policy's drafters had intended to cover all small surgical facilities, including the one that Plaintiffs own, it would have been much more natural to include them all under a single provision, as opposed to covering some of them under a highly specific heading (free-standing surgical facility) and others under a very general one (other health care facility).  Furthermore, any colorable definition of "Other Health Care Facility" that would cover Plaintiffs' surgical practice would almost certainly also cover any "Free-standing Surgical Facility," rendering that item superfluous, which again implicates the principle that ERISA plans and insurance contracts should be interpreted in a way that avoids making certain policy provisions redundant.

Additionally, the regulations that Plaintiffs cite do not provide any support for the proposition that Dr. Levin's surgical practice ought to be considered an "Other Health Care Facility."  The concept of a "surgical practice" is included in N.J.A.C. § 8:43A-1.3 merely for the purpose of excluding such practices from the definition of "surgical facility," a category of facilities which are subject to various regulations.  In other words, the very purpose of the regulation to which Plaintiffs cite is to establish that facilities such as Dr. Levin's are not surgical *facilities* but merely surgical *practices*, and as such are not subject to the same regulations that govern places large enough to qualify as facilities.

Since Plaintiffs have not put forward a reasonable interpretation of the term "Other Health Care Facility," and the policy seems designed to restrict coverage to only those surgical facilities that meet certain criteria, the Court finds that the term unambiguously excludes small, unlicensed surgical practices of the type operated by Dr. Levin. Therefore, under either the *de novo* or abuse of discretion standard, Plaintiffs will not be able to prevail on their ERISA claims. If the more stringent *de novo* standard is used, Plaintiffs will not be able to prevail because a *de novo* review of the ERISA plans supports Defendants' reading. On the other hand, if the abuse of discretion standard applies, then regardless of what happened at the administrative level in this case, Defendants did not abuse their discretion. Since the term "Other Health Care Facility" is not ambiguous with respect to the question of whether or not it includes Plaintiffs' facility, the claim administrators involved in administering the ERISA-governed policies did not exercise any discretion in construing that term. Defendants are accordingly entitled to summary judgment in their favor on Plaintiffs' ERISA claims.

Defendants are also entitled to summary judgment in their favor on Plaintiffs' non-ERISA claims. When an insurance policy provision is unambiguous, a court is compelled to apply it to the uncontested facts of the case as a matter of law. Since the policy language at issue in this case is not ambiguous, the Court simply must apply it according to its plain meaning, which—as was just explained—does not cover Dr. Levin's facility. Plaintiffs argue that evidence of Defendants' past payments to Plaintiffs shows that the Policy should be interpreted to include Dr. Levin's facility. Plaintiffs also argue that, as insurance contracts, the policies at issue in this case should be construed in favor of coverage. However, since the term "Other Health Care Facility" is not ambiguous—at least not in any way that could be construed in Plaintiffs' favor—this Court need not resort to extrinsic evidence concerning past payments or special rules of contract interpretation that apply to ambiguous insurance contracts. The plain

12

language of the insurance policies makes clear that Plaintiffs are not entitled to reimbursement for the facility fees charged by Dr. Levin's surgical practice.

### IV. CONCLUSION

For the foregoing reasons, IT IS, this 16th day of August, 2010,

ORDERED that Plaintiffs' Motion for Summary Judgment [docket # 20] is DENIED; and it is further

ORDERED that Defendants' Cross-Motion for Summary Judgment [23] is GRANTED; and it is further

ORDERED that JUDGMENT is entered in favor of Defendants and against Plaintiffs with respect to the claims that relate to the twelve employee benefit plans that are consistent with the language set forth in the East Windsor School District Plan, specifically Plans for (1) CompuCom Systems, Inc. Open Access Plus Medical Benefits, (2) East Windsor Regional School District, (3) GE Security, Inc. Open Access Plus In-Network Medical Benefits, (4) Giesecke & Devrient America, Inc., (5) IEEE Preferred Provider Medical Benefits, (6) New Jersey Building Laborers Statewide Welfare Fund, (7) the Perth Amboy Board of Education Preferred Medical Benefits (for Active Employees), (8) The Bank of Tokyo-Mitsubishi UJF, Ltd., (9) ARCADIS, Inc. Welfare Benefit Plan (effective January 1, 2008), (10) ARCADIS, Inc. Welfare Benefit Plan (effective January 1, 2009), (11) City of Perth Amboy Open Access Plus Medical Benefits-Retirees (No Vision), and (12) City of Perth Amboy Open Access Plus Medical Benefits.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.